Rec #095/05



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KRISTY J. DOWNING,<br>Plaintiff,<br><br>v.<br><br><br><br>MICHELLE LEE, DIRECTOR,<br>U. S. PATENT AND TRADEMARK OFFICE<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case:4:16-cv-12994
Judge: Parker, Linda V.
MJ: Grand, David R
Filed: 08-17-2016 At 11.16 AM
CMP KRISTY J. DOWNING V MICHELLE LE
E (LG)

### Jury Trial Demand

**KRISTY J. DOWNING**
Appearing *Pro Se*
4065 Radcliff Dr.
Canton, Michigan 48188
Tel:    (248) 982-3925
Fax:    (888) 317-3582

**U.S. PATENT AND TRADEMARK OFFICE**
Office of EEO & Diversity
P.O. Box 1450
Alexandria, Virginia 22313-1450
Tel:    (571) 272-3000
Fax:    (571) 273-0099

## COMPLAINT

1.    Comes Now, Plaintiff, Kristy J. Downing, and files her Complaint against the

above-named Defendant on the following grounds:

### Introduction

2.    This is an action for gender discrimination pursuant to 42 USC §2000e *et seq.*

(Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## Jurisdiction

3.    The jurisdiction of this court is invoked pursuant to 28 USC §1331 and 28 USC §1343.

4.    Defendant (hereafter "the US PTO" or "Defendant") is an "employer" engaged in an industry affecting commerce as defined by 42 USC §2000e(b). Specifically, Defendant is a federal government agency.

5.    This Court has personal jurisdiction over Defendant; at all relevant times, Defendant operated a satellite office within the State of Michigan.

## Venue

6.    Defendant operates its business within the Eastern District of Michigan. At least some actions by Defendant alleged herein pertain to employment within the Eastern District of Michigan. Venue is proper in this judicial district and division pursuant to 28 USC §1391(b) & (c).

## The Parties

7.    Plaintiff, Kristy J. Downing (hereafter "Ms. Downing" or "Plaintiff"), is a female, US patent attorney residing in Wayne County, Michigan.

8.    Defendant is a federal government agency, having a headquarters in Alexandria, Virginia and a satellite office in Wayne County, Michigan.

### Facts

9.    Defendant operates a satellite office at 300 Riverplace Dr., Suite 2900, Detroit, Michigan 48207.

10.    In February of 2015, Defendant advertised a job opening for a patent examiner position located in its Detroit, Michigan satellite office.  (Job vacancy reference no.: CP-2015-0050).

11.    On February 26, 2015, Plaintiff submitted an application for the examiner position CP-2015-0050.

12.    By Defendant's own admission, Plaintiff is considered to be "best qualified" for the examiner position CP-2015-0050.

13.    On May 08, 2015, Defendant failed to hire Plaintiff for the examiner position CP-2015-0050 and instead hired substantially less qualified male applicants.  For example, Johntae King, who is male, was hired over Plaintiff and he has no law degree, no patent experience and graduated with his bachelors in 2009, whereas Plaintiff is a lawyer, had 10+ years of patent experience at that time and graduated with her bachelors in 2000, nine years prior to Mr. King.

14.    Additionally, Joseph Brown, who is male, was hired over Plaintiff though he has no law degree, no patent experience and graduated with his bachelors in 2015, the year he was hired, whereas Plaintiff is a lawyer, had 10+ years of patent experience at that time and graduated with her bachelors in 2000, fifteen years prior to Mr. Brown.

15.    Moreover, John Valdes, who is male, was hired over Plaintiff though he has no law degree, no patent experience and graduated with his bachelors in 2015, the year he was hired, whereas Plaintiff is a lawyer, had 10+ years of patent experience at that time and graduated with her bachelors in 2000, fifteen years prior to Mr. Valdes.

16.    Also, Jeffrey Larsen, who is male, was hired over Plaintiff though he has no law degree, no patent experience and graduated with his bachelors in 2015, the year he was hired, whereas Plaintiff is a lawyer, had 10+ years of patent experience at that time and graduated with her bachelors in 2000, fifteen years prior to Mr. Larsen.

17.    Defendant inaccurately referred to its Veterans Hiring Program as its reason why these candidates were selected over Plaintiff but at least one non-veteran male was hired over Plaintiff – Johntae King -- and the other males' hirings were not in accordance with the Veterans Hiring Program, which provides Veteran's preference over *similarly* qualified applicants not over applicants with substantially greater experience, such as Plaintiff.

18.    Also in February of 2015, Defendant advertised a job opening for a patent examiner position located in its Alexandria, Virginia office.  (Job vacancy reference no.: CP-2015-0014).

19.    On February 26, 2015, Plaintiff submitted an application for the examiner position CP-2015-0014.

20.    By Defendant's own admission, Plaintiff is considered to be "best qualified" for the examiner position CP-2015-0014.

21.    On May 20, 2015, Defendant failed to hire (or even interview) Plaintiff for the examiner position CP-2015-0014 and instead hired substantially less qualified male applicants. For example, Paul Gray, who is male, was hired over Plaintiff though he has no law degree, no patent experience and graduated with his bachelors in 2011, whereas Plaintiff is a lawyer, had 10+ years of patent experience at that time and graduated with her bachelors in 2000, eleven years prior to Mr. Larsen.

22.     Defendant inaccurately claimed that it met is hiring goals for the fiscal year as a reason for not hiring Plaintiff but as stated, at least Paul Gray, who is male and substantially less qualified than Plaintiff, was hired for the examiner position CP-2015-0014.

23.     Additionally, on June 30, 2016, Defendant hired Plaintiff for a patent examiner position located in Detroit, Michigan (job vacancy no.: CP-2016-0028), which is identical in its requirements to the aforementioned examiner positions. On July 19, 2016, Defendant rescinded its offer of employment for reasons outside of the terns of the offer letter. Defendant unlawfully terminated this offer for employment in retaliation for Plaintiff's charges of discrimination in the non-hire of examiner positions CP-2015-0050 & CP-2015-0014. Defendant set a start date for the examiner position CP-2016-0028 equal to the statutory deadline for a Final Agency Decision on the EEOC investigations for examiner positions CP-2015-0050 & CP-2015-0014 (pursuant to 29 CFR 1614.110, taking into consideration the weekend). That date was August 8, 2016. The Final Agency Decision, however, was administered late on August 12, 2016, and it was unfavorable to Plaintiff thus giving this court jurisdiction for the present filing.

24.     Finally, in September of 2014, Defendant advertised a job opening for two administrative patent law judge positions located in either of its Detroit, Michigan or Alexandria, Virginia offices. (Job vacancy reference nos: PTAB-2014-0054 & -0055).

25.     On September 20, 2014, Plaintiff submitted an application for the two administrative patent law judge positions PTAB-2014-0054 & -0055.

26.     By Defendant's own admission, Plaintiff is considered to be "best qualified" for the administrative patent law judge positions PTAB-2014-0054 & -0055; these positions actually supervise the work of a patent examiner.

27.     On May 29, 2015 and July 2, 2015, Defendant failed to hire (or even interview) Plaintiff for the administrative patent law judge positions PTAB-2014-0054 & -0055 and instead hired less qualified male applicants. For example, Garth Baer, who is male, was interviewed and hired over Plaintiff though he has four (4) years less patent experience than Plaintiff.

28.     Also, Kamran Jivani, who is male, was interviewed and hired over Plaintiff though he has three (3) years less patent experience than Plaintiff.

29.     Additionally, Nabeel Khan, who is male, was interviewed and hired over Plaintiff though he has three (3) years less patent experience than Plaintiff.

30.     Plaintiff has been treated differently than similarly-situated applicants and employees by Defendant in the terms and conditions of her employment because of her gender.

31.     Defendant has engaged in illegal discrimination against Plaintiff because of her gender.

## Count One: Title VII – Gender & Retaliation

32.     Plaintiff incorporates herein paragraphs 1 through 31 of her Complaint.

33.     Defendant has engaged in intentional gender discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, Plaintiff's non-hire for the aforementioned positions.

34.     Defendant has also engaged in unlawful retaliation in the terms and conditions of Plaintiff's employment, including, but not limited to, its rescinding of her offer of employment.

35.     Defendant's conduct violates Title VII.

36.     On June 12, 2015, Plaintiff timely filed a Complaint of Discrimination alleging gender discrimination with the Defendant's equal employment office with respect to patent

examiner positions CP-2015-0014 & CP-2015-0050 and administrative patent law judge position PTAB-2014-0055. (A true and accurate copy of Plaintiff's Complaint of Discrimination is attached hereto as Exhibit A).

37.     On July 31, 2015, Plaintiff timely filed a Complaint of Discrimination alleging gender discrimination with the Defendant's equal employment office with respect to her non-hire for administrative patent law judge position PTAB-2014-0054. (A true and accurate copy of Plaintiff's Complaint of Discrimination is attached hereto as Exhibit B).

38.     Plaintiff has satisfied all statutory prerequisites for filing this action.

39.     On August 12, 2016, Plaintiff received her "Final Agency Decision" dismissing her claim from Defendant's Equal Employment & Opportunities Department. (A true and accurate copy of the "Final Agency Decision" is attached hereto as Exhibit C).

40.     Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer loss of pay, benefits and prestige.


## Remedies and Relief Requested

Wherefore, Plaintiff prays for a judgment as follows:

1.  That the court appoint counsel for Plaintiff to this case;

2.  That the court order Defendant to reinstate Plaintiff for patent examiner position CP-2016-0028;

3.  That the court order Defendant to make an offer of employment to Plaintiff for patent examiner positions CP-2015-0014 & CP-2015-0050;

4.  That the court order Defendant to make an offer of employment to Plaintiff for administrative law judge positions PTAB-2014-0054 & -0055;

5. That the court grant full front pay to Plaintiff;

6. That the court grant full back pay with interest to Plaintiff;

7. That the court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to Title VII;

8. That the court grant Plaintiff a jury trial;

9. That the court grant Plaintiff all other relief the court deems just and proper; and

10. That the court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct.

_____

Kristy J. Downing
4065 Radcliff Dr.
Canton, Michigan 48188
Tel.: (248) 982-3925

August 17, 2016
Date

Plaintiff's Complaint - Page **8** of **8**

Plaintiff's Exhibit A

# Complaint of Employment Discrimination
## Against the United States Department of Commerce (DOC)
## United States Patent and Trademark Office (USPTO)

COMPLAINT NUMBER:                                        Filing Date:

### INFORMATION ABOUT YOU

Name Kristy Joi Downing

Email Address: kristyjdowning@gmail.com

Address PO Box 871053

Home Phone ( 248 ) 982-3925

City/State Canton, Michigan          Zip Code 48187

Work Phone ( )

Cell Phone (248) 982-3925

### INFORMATION ABOUT YOUR REPRESENTATIVE

Representative's Name N/a

You do not have to have a representative.

Address

Phone ( )

Fax ( )

City/State          Zip Code

Is your representative an attorney?    Yes    No

### INFORMATION ABOUT THE COMPLAINT

In which Operating Unit did the alleged discrimination take place?

Human resources selecting officials for the designated positions.

Did you work for the USPTO at the time?    Yes    No If yes, what was your position (title/series/grade), and operating unit?

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and **include dates**. If you need more space, attach an extra page(s).

Please See the attached three (3) pages.

What do you believe was (were) the reason(s) for the alleged discrimination? Check the appropriate box(es) and write in specific details. For example: If it was because of your race, what is your race? If it was because of your age, what is your date of birth?

- X Race
- Color
- Religion
- X Sex
- Genetic Information

- National Origin
- Age
- Disability
- Retaliation
- Sexual Orientation* (see below)

What remedy(ies) do you seek for the alleged discrimination? If you need more space, attach an extra page(s)

Back pay with interest pursuant to 29 CFR 1614.501(b).
An extension of an offer for employment for all positions. Id.

Did you discuss this(ese) issue(s) with an EEO Counselor?  X Yes    No Counselor's name? Christina M. Brogden

Did you file a grievance under a negotiated grievance procedure?    Yes  X No Filing date(s)?

Did you file a Merit Systems Protection Board (MSPB) appeal?    Yes  X No Filing date(s)?

SIGN HERE (OR HAVE YOUR ATTORNEY SIGN FOR YOU)
Form C0000 (October 14 2011)

DATE ( MONTH/DAY/YEAR)

June 12, 2015

**Downing, Kristy J. Formal Complaint Additional (3) Pages**

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and include dates

On May 08, 2015, I, Kristy J. Downing, was notified that I was not selected by the US Patent & Trademark Office for the position of Patent Examiner (Mechanical Engineering), Grades 7 and 9 advertised under vacancy announcement number CP-2015-0050

On May 20, 2015, I was notified that I was not selected by the US Patent & Trademark Office for the position of Patent Examiner (Mechanical Engineering), Grades 7 and 9, advertised under vacancy announcement number CP-2015-0014

On May 29, 2015, I was notified that I was not selected by the US Patent & Trademark Office for the position of Administrative Patent Judge advertised under vacancy announcement number PTAB-2015-0055

With respect to the above-referenced positions, I had discussions with an EEO Counselor, Christina M Brogden, regarding the same. I provided to her the following documentation, which is hereby incorporated by reference in this Complaint

1) Job Announcement for CP 2015 0050;

2) My Applications for CP 2015 0050, GS 07 and GS09;

3) My cover letter for CP 2015 0050, GS 07 and GS09

4) My resume for CP 2015 0050, GS 07 and GS09;

5) My school transcripts;

6) The application receipt confirmation I received from US PTO Human Resources on March 03, 2015 for CP 2015 0050, GS 07 and GS09;

7) An invitation for a WebEx Interview, for CP 2015 0050, GS 07 and GS09;

8) My confirmation letter of March 27, 2015 showing my interest in the interview for CP 2015 0050, GS 07 and GS09;

9) My filled in Candidate Interest Questionnaire for CP 2015 0050, GS 07 and GS09;

10) My April 01, 2015, thank-you letter I sent my interviewer after the interview for CP 2015 0050, GS 07 and GS09;

11) March 19, 2015 email from adrienne.johnson@uspto.gov indicating that minimum qualifications for CP 2015-0050 GS07 and GS09 were met;

12) My application materials for the CP 2015-0014 GS 07 position;

13) My application materials for the CP 2015-0014 GS 09 position;

14) My application receipt confirmation notice from USAjobs.gov for CP 2015-0014, GS07 & GS09;

15) My cover letter for CP 2015-0014, GS07 & GS09;

16) My resume for CP 2015 0014, GS07 & GS09;

17) The vacancy postings / job postings for CP 2015-0014, GS07 & GS09;

18) A notice indicating that my application had been referred to selecting officials for both for CP 2015-0014, GS07 & GS09;

19) My application materials for PTAB-2014-0055;

20) An application receipt confirmation for PTAB-2014-0055;

21) My certificate of good standing with the State Bar of Michigan for PTAB-2014-0055;

22) My cover letter for PTAB-2014-0055;

23) My resume for PTAB-2014-0055;

24) My writing sample for PTAB-2014-0055; and

25) Additional proof of active, good standing with the State Bar of Michigan for PTAB-2014-0055.

As the result of discussions with the EEO Counselor an Interview Summary was given to me on May 16, 2015, which is also hereby incorporated by reference

As additional background, I meet the minimum qualifications for each position  I have a Bachelor of Science in Mechanical Engineering.  I also have a Juris Doctor, which is not even a requirement for CP 2015 0050 and CP 2015-0014.  In fact, many colleagues that I have met who worked as a patent examiner did so before they went to law school or in tandem with their law studies.  Such credential is very relevant to the patent examining position because examiners have *quasi*-legal roles and responsibilities  *See e.g.*, Job Announcement for CP 2015 0050, p2 "Duties … Review patent applications to ensure conformity to formal requirements  Write legal office actions on patentability and respond to patent applicants"

I am licensed to practice law in the State of Michigan and other jurisdictions, which is not even a requirement for CP 2015 0050 and CP 2015-0014  Yet again, such credential is very relevant to the patent examining position because examiners have *quasi*-legal roles and responsibilities  *See e.g.*, Job Announcement for CP 2015 0050, p2

I am a member of the US PTO Bar and am licensed to practice before the US PTO, Reg. No. 56671. *See*, any of my resumes under the Bar Licenses Section. I have been doing so for over ten years now. Many colleagues that I have met who worked as a patent examiner did not take and pass the US PTO Bar before working as an examiner. Again, such credentials are very relevant to the patent examining position because studying for and passing the Patent Bar as well as responding to US PTO office actions requires essentially the same mental gymnastics and competencies that are required to fulfill an examiner's roles and responsibilities. *See e.g.*, Job Announcement for CP-2015-0050, p2 *see also*, Vacancy Questions, especially Qs 6 & 8.

Additionally, I have submitted several prior applications to positions at the US PTO comparable to these over the course of the last *two years*. Even though those applications are not the subject of this Complaint, it is highly probable that the exact same decision-makers involved in my denial of employment for those applications are also involved in my denial of employment for the applications that are the subject of the present Complaint. Those past applications, include the following:

- CP-2014-0008, for which I interviewed *via* WebEx on February 28, 2014, but was ultimately denied employment;
- PTAB-2014-0012, for which I interviewed in person on June 03, 2014, but was ultimately denied employment;
- CP-2014-0073, to which I was denied employment without interview; and
- PTAB-2014-0054, to which I was denied employment without interview.

US PTO Hiring Officials had an opportunity to know of my severe and lengthy underemployment. Such opportunity was given at least by my aforementioned past applications and the Experience Sections on my resumes which, according to US PTO request, also list salaries for each position held.

From my resume my gender is also clear as "Kristy" is a feminine name.

My resume also includes identifiers of my racial minority status/affiliation at least because in the Education Section, under my BS studies I list my following service roles: "National Society of Black Engineers, Academic Peer Advisor" and "Unified Minority Mechanical Engineers, President & Vice President."

Sincerely,

Kristy L Downing

Dated: June 12, 2015

Exhibit B

# Complaint of Employment Discrimination
## Against the United States Department of Commerce (DOC)
## United States Patent and Trademark Office (USPTO)

| COMPLAINT NUMBER: | Filing Date: |
|---|---|

## INFORMATION ABOUT YOU

Name  Kristy Joi Downing

Email Address: kristyjdowning@gmail.com

Address  PO Box 871053

Home Phone ( 248) 982-3925

City/State  Canton, Michigan        Zip Code  48187

Work Phone (    )
Cell Phone  ( 248 ) 982-3925

## INFORMATION ABOUT YOUR REPRESENTATIVE

Representative's Name  N/a

NOTE: You do not have to have a representative.

Address

Phone (    )

Fax    (    )

City/State        Zip Code

Is your representative an attorney?  ☐ Yes ☐ No

## INFORMATION ABOUT THE COMPLAINT

In which Operating Unit did the alleged discrimination take place?
Selecting Officials for the designated positions.

Did you work for the USPTO at the time? ☐ Yes ☒ No If yes, what was your position (title/series/grade), and operating unit?

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and **include dates**. If you need more space, attach an extra page(s).

With respect to PTAB-2014-0054, PTAB-2015-0033, and PTAB-2015-0034, I am sufficiently qualified to be interviewed for each position yet I was not invited to do so. For example, I interviewed for an identical position, PTAB-2014-0012, more than one year ago on June 3, 2014 when I was less experienced.

What do you believe was (were) the reason(s) for the alleged discrimination? Check the appropriate box(es) and write in specific details. For example: If it was because of your race, what is your race? If it was because of your age, what is your date of birth?

☒ Race

☐ National Origin

☐ Color

☐ Age

☐ Religion

☐ Disability

☒ Sex

☐ Retaliation

☐ Genetic Information

☐ Sexual Orientation* (see below)

What remedy(ies) do you seek for the alleged discrimination? If you need more space, attach an extra page(s).

Back pay with interest pursuant to 29 CFR 1614.501(b).
An extension of an offer for employment for all of the positions. Id.

Did you discuss this(ese) issue(s) with an EEO Counselor? ☒ Yes ☐ No  Counselor's name?  Christina M. Brogden

Did you file a grievance under a negotiated grievance procedure?   ☐ Yes ☒ No  Filing date(s)?

Did you file a Merit Systems Protection Board (MSPB) appeal?   ☐ Yes ☒ No  Filing date(s)?

SIGN HERE (OR HAVE YOUR ATTORNEY SIGN FOR YOU)

Form 00000 (October 14, 2011)

DATE ( MONTH/DAY/YEAR)

July 31, 2015


Plaintiff's Exhibit C

UNITED STATES DEPARTMENT OF COMMERCE
UNITED STATES PATENT AND TRADEMARK OFFICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF:

| | |
|---|---|
| KRISTY DOWNING,<br>Complainant,<br><br>v.<br><br>MICHELLE K. LEE, DIRECTOR,<br>U. S. PATENT AND TRADEMARK OFFICE,<br>Agency. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

EEOC Case No. 570-2016-00664X

Agency Case Nos. 15-56-47 and 15-56-67 (consolidated)

## FINAL AGENCY DECISION

This is the Final Agency Decision (FAD) of the United States Patent and Trademark Office (Agency or USPTO) regarding the complaint of discrimination identified above. Complainant, Kristy Downing (Complainant), an applicant for employment, alleged that she was discriminated against on the bases of race (African-American) and sex (female) when:

1. On May 8, 2015, Complainant was notified that she was not selected for vacancy announcement number CP-2015-0050 (patent examiner);

2. On May 20, 2015, Complainant was notified that she was not selected for vacancy announcement number CP-2015-0014 (patent examiner);

3. On May 29, 2015, Complainant was notified that she was not selected for vacancy announcement PTAB-2014-0055 (administrative patent judge);

4. On July 2, 2015, Complainant was notified that she was not selected for vacancy announcement PTAB-2014-0054 (administrative judge);

5. On July 24, 2015, Complainant was notified that she was not selected for vacancy announcements PTAB-2015-0033 and PTAB-2015-0034 (administrative judge);

6. On September 2, 2015, Complainant was notified that she was not referred to Selecting Official for vacancy announcement PTAB-2015-0043;

7. On October 26, 2015, Complainant was notified that she was not selected for vacancy announcement PTAB-2015-0031;

8. On October 26, 2015, Complainant was notified that she was not selected for vacancy announcement PTAB-2015-0030;

9. On January 19, 2016, Complainant was notified that she was not selected for vacancy announcement PTAB-2015 0040.

*See* Report of Investigation [ROI], Exhibit [Ex.] 4, pages [pp.] 60-62; Ex. 8 pp. 77-80; Ex. 9 pp. 82-84; Ex. 10 pp. 86-88; Ex. 11 pp. 93-95; Ex. 12 pp. 97-99.

## PROCEDURAL HISTORY

On May 8, 2015, Complainant made initial contact with the Agency's Office of Equal Employment Opportunity and Diversity (OEEOD). (ROI, Ex. 2, p. 46). An EEO counselor initially interviewed Complainant on May 14, 2015. (ROI, Ex. 2, p. 39). The Complainant subsequently filed a second informal complaint on July 2, 2015, and an EEO counselor conducted an interview on the second complaint on July 6, 2015. (ROI, Ex. 2, p. 39).

The first complaint of discrimination was not resolved informally and on June 8, 2015, the Agency provided Complainant with her notice of right to file a formal complaint of discrimination. (ROI, Ex. 2, pp. 46-48). Complainant filed her formal complaint of discrimination on June 12, 2015, and thereafter filed a second formal complaint of discrimination on July 31, 2015. (ROI, Ex. 1, pp. 33-37 and Ex. 5, p. 64, respectively). The Agency sent Complainant a Notice of Consolidation on August 5, 2015, informing Complainant that the two complaints of discrimination had been consolidated. *See* 29 C.F.R. § 1614.606. The Agency issued the fourth amended notice of investigation on the consolidated cases on February 4, 2016. (ROI, Ex. 12, p. 97).

Complainant timely requested a hearing before an administrative judge (AJ) of the Equal Employment Opportunity Commission (EEOC) on or about January 25, 2016 because more than 180 days had passed since the filing of the first complaint. *See* 29 C.F.R. § 1614.108(h). OEEOD completed its investigation and sent Complainant a copy of the Report of Investigation (ROI) and Notice of Right to Request a Hearing on June 3, 2016, which was before the 360th day after filing the first complaint. On June 8, 2016, Complainant requested an immediate final decision after moving to withdraw her hearing request. *See* 29 § C.F.R. 1614.110(b). On June 14, 2016, the AJ issued an Order of Dismissal based on Complainant's motion. *See* EEOC's Order of Dismissal. Per the EEOC's order dismissing the hearing request and remanding the case to the Agency for a final agency decision (FAD) on the merits, this FAD issues.

## MATERIAL FACTS

*Complainant's Background*

1. Complainant identifies herself as "African American" and her sex as female. (ROI, Ex. 13, p. 102). She is not a veteran of the US armed forces. (ROI, Ex. 34(e), pp. 354-63). While Complainant's applications to the Agency (discussed at length below) do not expressly state her race or sex, Complainant states that her sex can be inferred from her feminine first name and her answer to the selective service question. (ROI, Ex. 13, pp. 102, 108). Complainant further suggests that her

race can be inferred from her resume, which indicates her involvement as a member of the "National Society of Black Engineers." (ROI, Ex. 13, pp. 102, 108).

2. Complainant received her Bachelor of Science (BS) degree in mechanical engineering and her juris doctorate (JD) from the University of Michigan. (ROI, Ex. 34 pp. 354-356). Complainant is a licensed patent attorney; she has practiced patent law for over 10 years and describes herself as an active member in the Patent Bar association, and that she has attended many events and lectures at the USPTO in the past. (ROI, Ex. 13, p. 102; Ex. 34, pp. 354-356).

### The Patent Examiner Hiring Process

3. The Agency follows the guidance set forth in the Office of Personnel Management's (OPM), "Delegated Examining Operations Handbook," in conjunction with the Agency's Delegated Examining (DE) procedures and responsibilities when hiring from competitive service vacancy announcements. (ROI, Ex. 47, pp. 1676-1697).

4. With competitive service announcements, such as the patent examiner vacancies, veterans receive a preference over other applicants and, if disabled, receive additional points based on their overall service connected disability rating. (ROI, Ex. 32, p. 279; Ex. 47, pp. 1676-1697). Applicants with at least a thirty percent (30%) service-connected disability rating are placed into the Compensable Preference Veterans (CPS) category and receive an additional ten (10) points on their applications; applicants with less than a 30% but at least a 10% service-connected disability rating receive an additional five (5) points on their application and their names are placed into the Compensable Preference (CP) category; and all other qualified service applicants are placed in the tentative preference (TP) category. (ROI, Ex. 47, p. 1679). Applicants who do not qualify for veterans preference are placed in the non-veterans (NV) category and do not receive additional points on their applications. (ROI, Ex. 47, p. 1685). Applicants in the CPS, CP, and TP categories are ranked higher than applicants in the NV category. (ROI, Ex. 47, p. 1685).

5. Applicants applying for a job vacancy with the USPTO are required to answer certain questions on-line as part of the application process. (ROI, Ex. 35(c), pp. 1159-1166).[1] The application does not ask for an applicant's race or sex. (ROI, Ex. 35(c), pp. 1159-1166). However, an individual has the ability to voluntarily disclose their race and sex by responding to the optional demographic questions.[2] (ROI, Ex. 13, p. 102).

6. The Agency's Office of Human Resource (OHR) conducts the initial screening of applicants, including the assessment of any applicable veteran's preference. (ROI, Ex. 20, p. 146; Ex. 47, p. 1672). OHR rates applicants on a point system as "gold," or "best qualified;" "silver," or "well-qualified;" and "bronze," or "qualified." From these rankings, OHR generates a "certificate of eligibles" of only those who are rated gold/best qualified; this list is called the "best qualified list" (BQL). (ROI, Ex. 20, p. 146; Ex. 47, p. 1672).

---

[1] The information provided in Complainant's application for CP-2015-0014 contains the same information that was provided by Complainant for CP-2015-0050.
[2] This information is collected for aggregate applicant flow data and is not provided to OHR personnel or hiring officials. See ROI, Ex. 20, p. 146; Ex. 34(d), pp. 308-331; Ex. 34(n), pp. 498-516.

7.      OHR provides the BQL (and the associated applications) to the hiring officials in the Patents Hiring Center (PHC), the organization within the Patents business unit (BU) responsible for hiring patent examiners, including resume review, interviewing, and selection. (ROI, Ex. 20, p. 146). The PHC acts as a liaison between OHR and the Patents hiring officials and is also responsible for approving the vacancy announcements, scheduling appointments, and setting up the time and date for interviews.[3] (ROI, Ex. 20, p. 146; Ex. 32, p. 278).

8.      After the PHC receives all of the applications on a given BQL, they distribute them to the subject matter experts (SMEs) from the relevant Technology Centers (TC) to substantively review the applications and determine who to interview.[4] (ROI, Ex. 20, p. 146; Ex. 32, p. 278). The BQL does not reveal the applicants' race or sex. (ROI, Ex. 34(d), pp. 308-331; Ex. 34(n), pp. 498-516). If the SME identifies a qualified applicant to interview from the BQL, PHC staff schedule an interview, which a Supervisory Patent Examiner (SPE) conducts. (ROI, Ex. 20, p. 146; Ex. 32, p. 278).

9.      The SPEs conduct all patent examiner interviews using the "USPTO Entry-Level Interview Sheet," (Interview Sheet) which contains a standard set of five (5) questions. (ROI, Ex. 34(o), pp. 528-522; Ex. 34(p), pp. 524-1007). The Interview Sheet also indicates that the interviewer must cover patent examiner production, placement, the Patent Training Academy, and the career ladder progression. (ROI, Ex. 34(p), p. 527). The interviewing SPEs score all applicants on the same generic rubric of 1 to 5 points, with 1 being the worst and 5 being the best. (ROI, Ex. 18, p. 136). The Interview Sheet with the applicant's rating, along with the candidate interest questionnaires (area of technology interest) are returned to the PHC and compiled into a database. (ROI, Ex. 18, p. 136; Ex. 19, p. 141; Ex. 34(n), pp. 498-516).

10.     In the PHC, the Hiring Coordinators (HCs) from each of the 8 TCs review the applicants' information in the database. (ROI, Ex. 20 p. 146; Ex. 32, p. 278). The HCs are SPEs who are assigned to the PHC as a collateral duty and have the ability to make candidate selections on their respective TC selection form. (ROI, Ex. 18, p. 135; Ex. 32, p. 278).

11.     Once the HCs make their selections, one of the two (2) PHC Directors, TC Directors who are collaterally assigned to the PHC, reviews and approves the HC's selections and submits the list of approved selections to OHR. (ROI, Ex. 19, pp. 141-142). The PHC Directors consider the patent examiner selection process to be decentralized with no single decision maker for hiring. (ROI, Ex. 19, p. 141).

*Complainant's Application for Patent Examiner Vacancies*

12.     Complainant submitted her applications on line through www.usajobs.gov (also known as "Monster" because it is run by a contractor, Monster, Inc.) to be an entry level patent

---

[3] The PHC is operated by contractors; however, all the Patents hiring officials are Agency employees. (ROI, Ex. 20, p. 146).

[4] The Patents BU is organized into 8 different TCs, each responsible for different technology areas (*e.g.*, mechanical engineering, chemistry). Within the TCs, patent examiners are organized into art units (AUs) that focus on a specific "art" or area of that technology.

examiner in mechanical engineering under vacancy announcements (VAN) CP-2015-0050 and CP-2015-0014. (ROI, 34(e), pp. 354-363).

13.　　VANs CP-2015-0014 and CP-2015-0050 were both competitive announcements, entitling veterans to a hiring preference over others on the same BQL. (ROI, Ex. 32, p. 279).

14.　　Complainant made the BQL for the above-referenced patent examiner vacancies and OHR forwarded her application to the PHC for further consideration. (ROI, Ex. 34(d), pp. 312; 324; Ex. 34(q), p. 1009; Ex. 35(b), pp. 1043, 1103). Complainant was in the NV category because she had no veteran's preference. (ROI, Ex. 34(d), p. 312).

*Consideration for VAN CP-2015-0050*

15.　　For VAN CP-2015-0050, the PHC contacted Complainant to schedule a telephonic interview with a SPE from AU 3735, TC 3700, (TC 3700 SPE) who was conducting interviews of applicants for mechanical engineering examiner positions in TC 3700. (ROI, Ex. 13, p. 103; Ex. 18, p. 135). TC 3600 and TC 3700 are both mechanical engineering technology centers and regularly hire under this type of vacancy announcement.[5] (ROI, Ex. 18, p. 137).

16.　　On April 1, 2015, Complainant was interviewed telephonically for the position by the TC 3700 SPE, who identifies her race as Asian American/Pacific Islander and her sex as female. (ROI, Ex. 18, p. 135). The TC 3700 SPE stated that she was responsible for interviewing multiple applicants for VAN CP-2015-0050 and scoring them on their responses to the interview questions. (ROI, Ex. 18, p. 135). The TC 3700 SPE gave Complainant a 3 out of 5 on the interview. (ROI, Ex. 18, pp. 135-136). The TC 3700 SPE recalled that she spoke well during the interview and generally answered all of the questions asked from the Interview Sheet, and that Complainant received a "good interview score." (ROI, Ex. 18, p. 136).

17.　　After the interview, the PHC received Complainant's Interview Sheet, it was added into the database along with other applicants, and made available to view by multiple HCs. (ROI, Ex. 18, p. 136). The TC 3700 SPE had no further involvement in the hiring process after submitting Complainant's Interview Sheet to the PHC. (ROI, Ex. 18, p. 136).

18.　　At the time TC 3700 SPE conducted the interview, she was not aware of Complainant's race (she learned it during the informal counseling process for this complaint) and became aware of Complainant's sex during her interview based on her feminine first-name. (ROI, Ex. 18, p. 135). The TC 3700 SPE denies that Complainant's race and/or sex were factors considered in the hiring decision. (ROI, Ex. 18, p. 136).

19.　　The PHC Director who signed off on the selections for vacancies CP-2015-0050 identifies herself as a Caucasian female, and testified that she became aware of Complainant's race and sex during the investigation of the complaint. (ROI, Ex. 19, p. 141). The PHC Director denies

_____

[5] The TC 3700 SPE testified that she did not believe that TC 3700 selected anyone for the vacancy because the spreadsheet she reviewed of the selections made by TC 3700 did not contain the names of applicants hired under veteran's preference. (ROI, Ex. 18, p. 137).

that Complainant's race and/or sex were factors considered in the hiring decision. (ROI, Ex. 19, p. 141).

20.    For VAN CP 2015-0050 the Agency selected three (3) individuals from the BQL (hereinafter Selectee 1, Selectee 2, and Selectee 3, respectively). (ROI, Ex. 32, p. 278-279). Selectee 1 received an overall score of 3.5 out of 5 points on the interview, and Selectees 2 and 3 received an overall scores of 3 out of 5 points on the interview. (ROI, Ex. 34(n), pp. 397-398; Ex. 34(p), pp. 589-592, pp. 719-722, pp. 854-857).

21.    Selectee 1, Selectee 2, and Selectee, are all white males; all received some type of veteran's preference. (ROI, Ex. 32, p. 279; Ex. 34(a), p. 285; Ex. 34(d), p. 333).

22.    On May 8, 2015, Complainant was notified by OHR of her non-selection for CP-2015-0050. (ROI, Ex. 13, p. 103).

*Consideration for VAN CP-2015-0014*

23.    For VAN CP-2015-0014, the PHC used several cut-off dates for generating the BQLs, which provided different time frames for when applicants were required to submit their application materials. (ROI, Ex. 32, p. 279). The first cut-off date for vacancy CP-2015-0014 was January 14, 2015, and the second cut-off date was March 8, 2015. (ROI, Ex. 32, p. 279; Ex. 35(b), p. 1030; Ex. 49(f), p.

24.    Complainant did not apply for the position by the first cutoff date (1/14/2015); her name did not appear on the first BQL that OHR referred to the PHC for further consideration. (ROI, Ex. 32, p. 279; Ex. 35(b), p. 1030).

25.    On February 26, 2015, Complainant submitted her application materials for vacancy CP-2015-0014, in time for the second cut-off date, March 8, 2015, and her name appeared on the second BQL and was referred to the PHC for further consideration. (ROI, Ex. 35(b), p. 1030; Ex. 35(c), pp. 1139-1166).

26.    On May 20, 2015, Complainant was notified by OHR that she was not selected for vacancy announcement CP-2015-0014. (ROI, Ex. 13, p. 105).

27.    From the January BQL for VAN CP-2015-0014, the Agency selected individuals that were eligible for hire under veteran's preference.[6] (ROI, Ex. 32, p. 279). Additionally, the Agency made no selections for either of the mechanical engineering TCs. (ROI, Ex. 34(n), pp. 498-515).

28.    No selections were made from the second, March BQL for VAN CP-2015-0014 – the one on which Complainant appeared. (ROI, Ex. 32, p. 279; Ex. 34(q), p. 1030). The Agency stated that it made no selections from the March BQL because determined that it met its hiring goals in that area for the fiscal year with the selections made from the January BQL. (ROI, Ex. 32, p. 279; Ex. 34(q), p. 1030).

---

[6] Complainant questions whether certain of the selectees had a veteran's preference. (ROI, Ex. 49(f)). Regardless, these individuals were all selected from the January BQL on which Complainant did not appear.

*Patent Trial and Appeal Board Hiring Process*

29. OHR reviews the applications for individuals applying for Administrative Patent Judge (APJ) positions with the Patent Trial and Appeal Board (PTAB) and provides a BQL to PTAB for further consideration. (ROI, Ex. 21, p. 151).

30. During the times relevant to the instant complaint, the manner that PTAB conducts the initial screening of applications after receiving the BQL changed due to a change in personnel. (ROI, Ex. 21, p. 152).

31. Under the former review process, once PTAB received the BQL from OHR the former Chief APJ[7] of PTAB performed the initial screening of applications and voted "yes, maybe, or no" on whether to interview a respective applicant. (ROI, Ex. 22, p. 157). The votes were then entered into a chart that contained the names of each applicant and indicated whether the applicant had previously interviewed or applied for an APJ positon. (ROI, Ex. 22, p. 157). Only those applicants who received a "maybe" or "yes" vote from the former Chief APJ were forwarded to a different APJ within PTAB for a second level of review and consideration. (ROI, Ex. 22, p. 158). Applicants who received a "no" vote during the former Chief APJ's initial review of their application never received a second review from another APJ, nor were they ever asked to interview for the positon. (ROI, Ex. 22, p. 158).

32. Sometime in June of 2015, the process for reviewing the applications and determining who should receive an interview changed from the two APJ review described above to a three APJ review conducted within the Monster electronic hiring system. (ROI, Ex. 21, pp. 151-152). Under the new application screening process, once PTAB receives the BQL from OHR, three APJs are assigned to independently review the applications in the Monster database and to rate each applicant either "pass" or "fail." (ROI, Ex. 21, p. 152; Ex. 25, p. 169; Ex. 29, p. 194).

33. Applicants who receive a "fail" rating from either two or three APJs during the initial screening do not move forward in the hiring process, which involves an interview. (ROI, Ex. 29, p. 194). Conversely, applicants who receive a "passing" score from at least 2 of the APJs are forwarded on to the Acting Deputy Chief APJ and Acting Chief APJ for further consideration in the hiring process, including an interview. (ROI, Ex. 29, p. 194; Ex. 45(c), p. 1482).[8]

34. A panel of APJs conducts the interviews using a standard set of questions including, how the candidate would deal with a specific situation, case law questions, the candidate's technical experience, and the reason the candidate wants to be an APJ. (ROI, Ex. 28, p. 190). After the interview, the panel members meet to discuss the candidate's responses and reach a consensus on which candidates to recommend moving forward in the selection process. (ROI, Ex. 25, p. 175; Ex. 28, p. 190). The interview panel is also responsible for checking a candidate's references before recommending that the candidate receive a second interview with the Acting Deputy Chief APJ and the Acting Chief APJ. (ROI, Ex. 21, p. 152).

---

[7] The former Chief APJ retired from his position with the Agency in the summer of 2015, and was unavailable to be interviewed during this investigation. (ROI, Ex. 21, p 151; Ex. 22, p. 159; Ex. 51, p. 2329).

[8] The new Chief APJ had not been named at the time relevant to the instant case.

35.     After the second interview, the Acting Deputy Chief APJ and Acting Chief APJ make a recommendation on the appointment of a candidate to the Director of the Agency who then forwards the recommended appointees to the Secretary of Commerce via an Action Memorandum. (ROI, Ex. 21, p. 152). Statute requires that the Secretary of Commerce appoint APJs, in consultation with the Director of the USPTO. (ROI, Ex. 21, p. 152).

*Complainant's Application for VAN PTAB-2014-0055 and PTAB-2014-0054*

36.     Complainant applied for and made the BQL for the above-referenced PTAB APJ vacancies and OHR forwarded her application to PTAB for further consideration. (ROI, Ex. 39(b), p. 1200; Ex. 40(b), p. 1246; Ex. 41(b), p. 1302; Ex. 45(c), p. 1478).

37.     Complainant states that her education, legal background, and experience make her extremely well-qualified to be an APJ. (ROI, Ex. 14, pp. 117-118; Ex. 15, pp. 121-122).

38.     Complainant received a "no" vote from the former Chief APJ during the initial screening of her application materials, which served to preclude from receiving a second review by another APJ. (ROI, Ex. 50, p. 2315). Agency records indicate that the former Chief APJ reviewed Complainant's application and determined not to interview her for the position because Complainant had previously interviewed for the position and had not been selected. (ROI, Ex. 6, pp. 70-71). The former Chief APJ states that he could not recall the specifics of how Complainant performed during the interview because he reviewed over 2,300 applications and conducted over 600 interviews throughout the years, but noted that it is likely Complainant did not perform well during the interview since she was not selected for the position at that time. (ROI Ex. 6, p. 71).

39.     The former Chief APJ denies that Complainant's race and/or sex were considered in determining not to recommend her for the position for PTAB-2014-0054 and PTAB-2014-0055. (ROI, Ex. 6, p. 71; Ex. 22, p. 159).[9]

40.     On May 29, 2015, Complainant received an email from OHR notifying her of her non-selection for the APJ position under VAN PTAB-2014-0055. (ROI, Ex. 13, p. 108). On July 2, 2015, Complainant subsequently received another email from OHR notifying her of her non-selection for the APJ position under VAN PTAB-2014-0054. (ROI, Ex. 14, p. 113).

41.     At the time the investigation ended, Agency records do not show the Secretary of Commerce had made any appointments for either VAN. (ROI, Ex. 39(d), p. 1233).

*Complainant's Application for Vacancy Announcements PTAB-2015-0033; PTAB-2015-0034; and PTAB-2015-0043*

42.     The Agency considered Complainant for the above-referenced vacancies under the newer, 3-APJ review panel method. (ROI, Ex. 23, p. 162; Ex. 25, p. 168; Ex. 36, p. 1169; Ex. 30, p. 199).

43.     The Lead APJ of Section 17 (Lead Section 17 APJ), an APJ in Section 5 (Section 5 APJ), and an APJ in Section 15 (Section 15 APJ) reviewed the applications on the BQL for vacancies

---

[9] Complainant states that the Agency could infer her sex and race from her application materials. *See* Facts, ¶ 1, above.

PTAB-2015 0033, PTAB-2015-0034, and PTAB-2015-0043. (ROI, Ex. 23, p. 162; Ex. 25, p. 168; Ex. 36, p. 1169; Ex. 30, p. 199). The APJs reviewed all individuals on the BQL, including Complainant, within Monster and determined whether to recommend them for further consideration by giving each applicant either a "pass" or "fail" rating. (ROI, Ex. 23, p. 161).

44.     Complainant received a "fail" rating from all three APJs who initially reviewed Complainant's application for VANs PTAB-2015-0033, PTAB-2015-0034, and PTAB-2015-0043. (ROI, 41(e), pp. 1330, 1333, 1336). Because they did not recommend Complainant for further consideration, it precluded her from moving on the hiring process. (ROI, 41(e), pp. 1330, 1333, 1336).

45.     The Section 5 APJ identifies herself as a Caucasian female, and was responsible for reviewing the application materials of 30-80 applicants for each vacancy announcement. (ROI, Ex. 23, p. 163). The Section 5 APJ stated that she did not recommend Complainant for further consideration because Complainant's responses to the vacancy questions failed to demonstrate that she possessed the level of experience and skill required for the job. (ROI, Ex. 23, p. 163).

46.     The Section 15 APJ identifies himself as a Caucasian male, and was unable to recall the specifics of Complainant's resume or the names associated with the other resumes that he reviewed because he reviewed at least 50 resumes. (ROI, Ex. 30, p. 200). The Section 15 APJ stated that in reviewing application materials, he was looking for applicants with a strong technical background as well as experience in both prosecution and litigation, were passionate about working for the board, and had a "balance" across all disciplines covered by PTAB, which are Bio-Technology, Mechanical, Electrical and Chemical Engineering. (ROI, Ex. 30, p. 200). Because the Section 15 APJ reviewed so many applicants' resumes, he could not recall specifically why he did not recommend Complainant for an interview nor could he recall who he rated as pass, but he believed that it was because Complainant did not possess the experience or other criteria he looked for in an applicant. (ROI, Ex. 30, p. 200).

47.     The Lead Section 17 APJ identifies herself as a Caucasian female and was responsible for reviewing approximately 30-50 applications for each vacancy announcement. (ROI, Ex. 25, pp. 169-170). The Lead Section 17 APJ did not recommend Complainant for an interview because Complainant had done a limited amount of patent work in the last few years, was not as well-rounded in all areas of intellectual property as other applicants, and appeared to be heavily focused on patent prosecution. (ROI, Ex. 25, p. 169). The Lead Section 17 APJ stated that in reviewing the application materials of candidates she looked for applicants who worked well with others, possessed a strong background in patents and had strong writing skills, could render decisions in a number of different types of cases, including *ex parte* appeals, reexaminations, interferences, and American Invents Act ("AIA") trials, and could "hit the ground running" when they started the position. (ROI, Ex. 25, p. 169). The Lead Section 17 APJ recommended roughly 50% of the applications, although she was unable to recall specifically who she recommended. (ROI, Ex. 25, p. 170).

48.     The Lead Section 17 APJ was aware of Complainant's race and sex, becoming aware of them when she researched Complainant's name online to determine if she knew Complainant because her review of Complainant's resume showed they had once worked at the same law firm. (ROI, Ex. 25, p. 168). The Section 5 APJ and the Section 15 APJ state they were unaware of

Complainant's race and sex at the time they reviewed Complainant's application materials. (ROI, Ex. 23, p. 164; Ex. 30, p. 200).

49.      All three APJs deny that Complainant's race and/or sex was a factor in their decision to not recommend Complainant for an interview. (ROI, Ex. 23, p. 164; Ex. 25, p. 170; Ex. 30, p. 200).

50.      On July 24, 2015, Complainant received an email from OHR notifying her of her non-selection for the APJ position under vacancy announcements PTAB-2015-0033 and PTAB-2015-0034. (ROI, Ex. 14, p. 114). On September 2, 2015, Complainant subsequently received another email from OHR notifying her of her non-selection for the APJ position under vacancy PTAB-2015-0043. (ROI, Ex. 15, p. 121).

51.      At the time the investigation ended, Agency records do not show the Secretary of Commerce had made any appointments for the above-referenced vacancy announcements. (ROI, Ex. 41(a), p. 1287).

*Complainant's Application for Vacancy Announcements PTAB-2015-0031, PTAB-2015-0030, and PTAB 2015-0040*

52.      The Lead APJ of Section 1 (Lead Section 1 APJ), an APJ in Section 9 (Section 9 APJ), and an APJ in Section 7 (Section 7 APJ), reviewed the applications, including Complainant's, on the BQL for PTAB 2015-0031 and PTAB-2015-0030 and rating each applicant either pass or fail within the Monster hiring database. (ROI, Ex. 36, p. 1169). All three APJs who reviewed Complainant's application for the PTAB-2015-0031 and PTAB 2015-0030 gave Complainant a passing rating, thereby placing Complainant on a list that was forwarded on for further consideration in the hiring process. (ROI, Ex. 43(b), p. 1375; ROI, Ex. 44(b), pp. 1403).

53.      The same panel reviewed Complainant's application for PTAB-2015-0040. (ROI, Ex. 36, p. 1169; ROI, Ex. 45(a), p. 1450). Complainant was given a passing score from the Section 7 and Section 9 APJ, and received a failing rating from the Lead Section 1 APJ.[10] (ROI, 45(a), p. 1450).

54.      Complainant received an invitation to interview for an APJ position with PTAB at the Detroit, Michigan regional office.[11] (ROI, 17, p. 130). On August 18, 2015, Complainant was interviewed for the APJ position by a four-APJ interview panel comprising of the Lead APJ of Section 13 (Lead Section 13 APJ), an APJ in Section 12 (Section 12 APJ), an APJ in Section 6 (Section 6 APJ), and an APJ in Section 10 (Section 10 APJ). (ROI, Ex. 17, p. 130; Ex. 36, p. 1169).

---

[10] Lead Section 1 APJ has no recollection of why she passed Complainant for PTAB-2015-0030 and PTAB 2015 0031 but not PTAB-2015-0040. (ROI, Ex. 29, p. 195). However, because only two (2) judges had to pass an applicant for further consideration, it is not material. (ROI, Ex. 45(a), p. 1454). Lead Section 1 APJ denies that her failure to recommend Complainant for further consideration in the application review process was discriminatory. (ROI, Ex. 29, pp. 194-195).

[11] It is not entirely clear on this record for which vacancies Complainant was interviewing, even to Complainant. (ROI, Ex. 17, p. 30; Ex. 26, p. 179). Given the Agency's stated policy of interviewing applicants who received at least 2 passing grades and the timing, this FAD presumes Complainant was considered further, via interview, for PTAB-2015-0030, PTAB-2015-0031, and PTAB-2015-0040.

All four APJs on the interview panel are Caucasian and female. (ROI, Ex. 25, p. 174; Ex. 26, p. 179; Ex. 27, p. 184; Ex. 28, p. 189).

55.    The Lead Section 13 APJ testified that the interview panel determined not to recommended Complainant because it had concerns about some of her responses to the interview questions, particularly Complainant's response and approach to how she would facilitate agreement among a three-APJ panel if there was a potential conflict of opinion with another panel member regarding the disposition of a matter and Complainant's response to how she would handle another panel member's bias towards a party. (ROI, Ex. 25, p. 174-175). Moreover, the Lead Section 13 APJ recalled that the interview panel also was concerned that Complainant possessed the minimum level of experience required for the position. (ROI, Ex. 25, p. 175). The Lead Section 13 APJ became aware of Complainant's race and sex when she met Complainant at a networking event a few years prior to her interview. (ROI, Ex. 25, p. 174).

56.    The Section 12 APJ recalled that some of Complainant's responses to the interview questions during the interview were questionable, and there were gaps in Complainant's employment history that made her question if she had the experience required for the position. (ROI, Ex. 26, pp. 179-180). Specifically, the Section 12 APJ stated that when Complainant was asked why she wanted the job, she responded because "everyone told her that she should be a judge," which she felt did not show the right interest in the position. (ROI, Ex. 26, p. 180). The Section 12 APJ stated that she became aware of Complainant's sex during her review of Complainant's resume, and she became aware of Complainant's race when she interviewed Complainant for the position. (ROI, Ex. 26, p. 179).

57.    The Section 6 APJ stated that the interview panel did not forward Complainant's application for further consideration because they concluded that Complainant lacked the experience required for the position based on her responses to some of the interview questions. (ROI, Ex. 27, p. 185). The Section 6 APJ recalled that Complainant exhibited a good demeanor during the interview, but that her answers to some of the panel's questions demonstrated a lack of maturity and/or ability to perform the duties required of the position. (ROI, Ex. 27, p. 185). Moreover, Complainant's resume showed a gap in her employment, which rendered her less qualified for the position than some of the other applicants interviewed, because the APJ position requires significant experience working in patent law. (ROI, Ex. 27, p. 185). The Section 6 APJ became aware of Complainant's sex and race based on her feminine first name, and when she interviewed Complainant for the position. (ROI, Ex. 27, p. 184).

58.    The Section 10 APJ was unable to recall Complainant's specific performance during the interview because she conducted so many interviews, but believed that Complainant was not recommended for further consideration because her interview responses were not to the level that is expected for a candidate that would move forward in the hiring process, and she believed that Complainant failed to submit proof of her admission to a state bar and was not working at the time of the interview. (ROI, Ex. 28, pp. 189-190). The Section 10 APJ became aware of Complainant's race and sex and when she interviewed Complainant for the position. (ROI, Ex. 28, p. 189).

59.    On October 26, 2015, Complainant received an email from OHR notifying her of her non-selection for the APJ position under vacancy PTAB-2015-0031 and PTAB-2015-0030. (ROI, Ex. 16, p. 125).

60.    On January 19, 2016, Complainant was notified that she was not selected for the position of APJ under vacancy PTAB-2015-0040.  (ROI, Ex. 17, p. 131; Ex. 49(k), p. 2235).

61.    All four APJ panelists deny that Complainant's race and/or sex were a factor in their decision not to recommended Complainant for further consideration.  (ROI, Ex. 25, p. 175; Ex. 26, p. 180; Ex. 27, p. 185).

62.    For PTAB-2015-0030, the Secretary of Commerce approved seven (7) APJ's for appointment. (ROI, Ex. 44(c), p. 1407).[12]  Of those APJs who were recommended for an appointment, six (6) are Caucasian, one (1) APJ is female and five (5) APJs are male.  (ROI, Ex. 37, pp. 1173-1181).  The demographic information for one (1) of the APJs was unavailable.  (ROI, Ex. 37, pp. 1173-1181).

63.    For PTAB-2015-0040, the Director recommended seven (7) individuals for selection as APJs, two (2) of whom are female.  (ROI, Ex. 44 (d), p. 1484).[13]

64.    The qualifications of the selectees for PTAB-2015-0030 and PTAB-2015-0040 include the following:

      a.    Selectee 1:  BS in Biology from Wake Forest University (Univ.), JD from Southern Methodist Univ. Dedman School of Law; 13 continuous years of service at Dickstein Shapiro LLP in the intellectual property (IP) group; adjunct professor at American Univ. Washington College of Law; 4 continuous years of service as general counsel for an intellectual property consultancy.  (ROI, Ex. 44(d), pp. 1410-20).

      b.    Selectee 2:  BS and JD from Univ. of Maryland; 12 years of continuous service at law firms, including 8 years at Finnegan Henderson, focusing on IP.  (ROI, Ex. 44(e), pp. 1422-23).

      c.    Selectee 3:  BS from The Cooper Union School of Engineering, JD from State Univ. of New York at Buffalo; 28 year continuous history at Leydig, Voit & Mayer, Ltd as a shareholder; 2013 Distinguish Alumnus Award, Univ. of Buffalo Law School, Students of Color; multiple published articles in IP field. (ROI, Ex. 44(f), pp. 1425-26).

      d.    Selectee 4:  BS and MS from Univ. of Maryland, JD from Harvard Law School; 25 years continuous experience at Wiley Rein LLP in IP, including last 16 years as partner.  (ROI, Ex. 44(g), pp. 1428-29).

      e.    Selectee 5:  BS from Georgia Institute of Technology, JD from George Mason Univ. School of Law; worked as patent examiner at Agency; 9 continuous years

---

[12]There is no data to indicate any selections were made for PTAB-2015-0031.

[13] The demographic information of the APJs confirmed by the Secretary of Commerce under vacancy PTAB-2015-0040 was unavailable at the time of the investigation.

as counsel for Bingham McCutchen, LLP in IP; 7 years as sole practitioner in IP law firm. (ROI, Ex. 44(h), pp. 1431-34).

f.   Selectee 6: BS, MS, and JD from Rutgers Univ., 25 years of continuous experience at numerous IP law firms. (ROI, Ex. 44(j), pp. 1436-38).

g.   Selectee 7: BA from Cornell Univ., Ph.D from Univ. of Washington, JD from New York Univ. School of Law; 19 years continuous experience at law firms, including principal at Fish & Richardson, PC, partner at Lowrie, Lando & Anastasi, LLP, and partner at Foley & Lardner, LLP, all in IP; multiple publications. (ROI, Ex. 44(k), pp. 1440-43).

h.   Selectee 8: BS and MS from Ohio State Univ., JD from Georgetown Univ. School of Law, US Navy veteran, 18 years continuous experience at Lawrence & Haug, LLP in IP, ending as partner, trial attorney at US Dep't of Justice. (ROI, Ex. 45(d), p. 1485).

i.   Selectee 9: BS from Georgetown Univ., MS from Miami Univ., JD from George Washington Univ. School of Law; Law Clerk, US Court of Federal Claims; 10 years continuous employment at various law firms in IP. (ROI, Ex. 45(d), p. 1485).

j.   Selectee 10: BS from Brigham Young Univ., JD from William and Mary Marshall-Wythe School of Law; law clerk at USPTO; 8 years continuous experience at Knobbe, Martens, Olson & Bear, ending as partner, in IP. (ROI, Ex. 45(d), p. 1485).

k.   Selectee 11: BS and MS from Georgia State Univ., JD from Univ. of Arkansas; 8 years continuous experience at various law firms in IP. (ROI, Ex. 45(d), p. 1486).

l.   Selectee 12: BS from Berea College, Ph.D from Ohio State Univ., JD from George Washington Univ. School of Law; law clerk for US Circuit Court of Appeals for the Federal Circuit; 2 years' experience at Boies, Schiller & Flexner, LLP; 7 years continuous experience at USPTO as Associate Solicitor. (ROI, Ex. 45(d), p. 1486).

m.   Selectee 13: BS from Univ. of Wisconsin, JD from Benjamin N. Cardozo School of Law; 11 years continuous experience at Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC in IP. (ROI, Ex. 45(d), p. 1486).

n.   Selectee 14: BS from Tufts Univ., JD from Georgetown Univ. School of Law; patent examiner at USPTO for 5 years, law clerk, US Circuit Court of Appeals for the Federal Circuit; 14 years continuous experience at various law firms, ending as counsel at Sidley Austin LLP in IP. (ROI, Ex. 45(d), p. 1486).

65.   The Agency has a policy that prohibits discrimination on the bases of race and sex, including in the selection of applicants for employment. (ROI, Ex. 48, pp. 1699-1701).

## ANALYSIS

Complainant alleges that she was discriminated against on the bases of sex (female) and race (African-American/black) when she was not selected for any of the above ten (10) patent examiner and APJ vacancies.

## I.    APPLICABLE LEGAL STANDARDS

### A. *Relevant Statute*

Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, makes it unlawful for employers, including the federal government, to discriminate against applicants for employment on the bases of their race or sex.

### B. *Disparate Treatment Discrimination Under Title VII*

#### 1.   Elements of a Prima Face Case of Discrimination

In the failure to hire context, a complainant establishes a *prima facie* case when she shows the following: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was not selected for the position; and, (4) an individual outside of her protected class was selected. *See Lucas v. Dep't. of the Army*, EEOC Appeal No. 01A43697 (March 30, 2005), 2005 WL 819560 (E.E.O.C.); *Williams v. Dep't. of Education*, EEOC Request No. 05970561 (August 6, 1998), 1998 WL 518408 (E.E.O.C.); Enforcement Guidance on *O'Connor v. Consolidated Coin Caterers Corporation*, EEOC Notice No. 915.002 (September 18, 1996). However, the Supreme Court has made it clear that there is no single formula for a *prima facie* case because "the facts of given cases 'necessarily will vary'....What is critical with respect to the fourth element is that the plaintiff demonstrate [s]he was not hired 'under circumstances which give rise to an inference of unlawful discrimination.'" *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

#### 2.   Burden of Proof in Title VII Disparate Treatment Cases

The Supreme Court and the EEOC have held that complainants may prove their case of discrimination using circumstantial or direct evidence. *See ***1 v. Dep't of Commerce (Bureau of the Census)*, EEOC DOC 0120112930 *6 (February 19, 2015), 2015 WL 1399390 (E.E.O.C.) (applying the burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny).[14] That is, because there is no allegation by Complainant or material facts on the record to indicate any direct evidence of discrimination on the basis of her sex and/or race *McDonnell Douglas*, as further explained in *Burdine*, 450 U.S. 248 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), and refined in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), applies to this case.

Under the *McDonnell Douglas* and progeny scheme, to prove her claim the complainant must make out a *prima facie* case of discrimination. The burden of production then shifts to the employer to

---

[14]Between 2013 and October 1, 2015, the EEOC stopped using Complainant's names; therefore, to distinguish between cases, they are designated as ***1 v. *Agency*, ***2 v. *Agency*, etc.

present a legitimate, nondiscriminatory reason for its action. This is a burden of production only, and not of persuasion. *See* \*\*\**1*, EEOC DOC 0120112930 at \*5. However, if the agency offers no adequate explanation for its treatment of the complainant, the agency does not carry its burden of production and the complainant prevails on the basis of inference of discrimination created by the *prima facie* case. *See Frady v. United States Postal Service (USPS)*, EEOC App. No. 01A05317 (January 10, 2003), 2003 WL 137914 (E.E.O.C.). If the employer meets this burden, any presumption of discrimination created by the prima facie case disappears; it simply "drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507.

Then, to prevail, the complainant must prove by a preponderance of the evidence that the agency's stated nondiscriminatory reason is mere pretext and that the real reason for the employment action was discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also St. Mary's Honor Ctr.*, 509 U.S. at 510-11, 515-16. The complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. *See Lyles v. USPS*, EEOC Appeal No. 01A11110 (May 22, 2002), 2002 WL 1211570 (E.E.OC.); and *Nathan v. USPS*, EEOC Appeal No. 01995788 (August 29, 2001), 2001 WL 1097337 (E.E.O.C). "Complainant can do this by showing that the proffered explanations are unworthy of credence. A showing that the employer's articulated reasons are not credible permits, but does not compel, a finding of discrimination." \*\*\**2 v. Dep't of Commerce (Nat'l. Oceanic and Atmospheric Administration)*, EEOC DOC 0120113373 at \*9 (March 9, 2015), 2015 WL 1635876 (E.E.O.C.) (citing *Burdine* and *Hicks*). "Bald statements and speculation...without corresponding probative evidence do not suffice to demonstrate pretext." \*\*\**3 v. USPS*, EEOC DOC 0120121258 at \*4 (July 11, 2014), 2014 WL 3571444 (E.E.O.C.) (internal citations omitted). The complainant always has the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 254.

## II.   COMPLAINANT'S *PRIMA FACIE* CASE OF DISCRIMINATION

### A.   *Was Complainant a Member of a Protected Class or Classes?*

Complainant has identified her race as "African-American" and her sex as "female;" therefore, for the purposes of this Final Agency Decision (FAD), she has established that she is a member of protected classes under Title VII and has established the first element of her *prima facie* case. *See* Material Facts (Facts), ¶ 1.

### B.   *Did Complainant Apply for Open Positions?*

With the exception of the first-cutoff date that was established for vacancy CP-2015-0014, Complainant applied for all two (2) patent examiner position and all eight (8) APJ positions listed above. *See* Facts at ¶¶ 12, 14, 24-26. With respect to CP-2015 0014 she did not apply for an open position; therefore, her claim fails with respect to the patent examiner position in VAN CP-2015-0014. For the remaining patent examiner position and the APJ positions, she has established the second element of a *prima facie* case of discrimination under Title VII.

### C.   *Was Complainant Qualified for the Open Positions?*

For all ten (10) vacancies for which she applied, Complainant was placed on the BQL by OHR. *See* Facts, ¶¶ 14, 25, 36. Therefore, for purposes of this FAD only, Complainant was at least qualified

for the positions at issue, and she has established the third element of her *prima facie* case of discrimination under Title VII.

D. *Was Complainant Rejected from the Positions Under Circumstances Giving Rise to an Inference of Discrimination?*

1. CP-2015-0050 and CP-2015-0014 (Mechanical Engineering)

First, on this record, Complainant cannot establish an inference of discrimination with respect to the patent examiner positions. Importantly, Complainant cannot establish that anyone considering her application, including the TC 3700 SPE who interviewed her, was aware of her race. Facts, ¶¶ 18. Without knowledge of Complainant's race, there is no permissible inference of discrimination. However, even assuming *arguendo* that Agency officials were aware of her sex and race, the Agency made no selections from CP-2015-0014 from the March BQL on which Complainant appeared. Facts, ¶ 28. Because no selections were made, no inference of discrimination attaches with respect to Complainant's application for VAN CP-2015-0014. The Agency selected only individuals with a veteran's preference, which Complainant indisputably did not possess, for VAN CP-2015-0050 (Facts, ¶ 22), which is a legal requirement. Accordingly, no inference of discrimination attaches with respect to VAN CP-2015-0014.

2. VAN PTAB-2014-0054 and PTAB-2014-0055

No inference of discrimination attaches with respect to the above-referenced vacancies because the former Chief APJ gave her a fail based on a prior non-selection, which Complainant has not alleged was discriminatory. Facts, ¶ 38. No current employee of the Agency re-examined Complainant's application with respect to those vacancies; therefore, on this record, no inference of discrimination can be established.

3. VAN PTAB-2015-0033, PTAB-2015-0034, PTAB-2015-0043

No inference of discrimination attaches with respect to the Complainant's failure to pass the application review portion for the above-referenced vacancies. To begin, two of the APJs who reviewed Complainant's application for PTAB-2015-0033, PTAB-2015-0034, PTAB-2015-0043 and "failed" her disclaimed knowledge of her race or sex, which if true, defeats any inference of discrimination. *See Gladden v. Dep't of Commerce*, 2011 WL 2619570 at *5 (D.Md. 2011) (if decision maker is unaware of protected class, "as matter of logic" he/she could not have considered it when acting). However, for purposes of this FAD only, it will be assumed Complainant's sex and race can be inferred from her resume, and that her failure to receive further consideration when others not of Complainant's race or sex did supports at least a potential inference of discrimination.

4. PTAB-2015-0031, PTAB-2015-0030, PTAB-2015-0040

On this record, Agency officials were aware of Complainant's race and sex at the time of interview and decided not to recommend her for further consideration. However, multiple of the selectees were women; therefore, Complainant cannot establish an inference of discrimination with respect to sex. Facts, ¶¶ 62-63. Because the record is not clear as to the race of the selectees, taking the facts in the light most favorable to Complainant, there is no evidence that any of the selectees were

African-American. Therefore, for the purposes of this FAD only, an inference of discrimination exists with respect to Complainant's claim that she was not selected for VAN PTAB 2015-0031, PTAB-2015-0030, and PTAB-2015-0040 because of her race.

## III.   AGENCY'S LEGITIMATE NON-DISCRIMINATORY REASONS

As noted above, Complainant failed to satisfy a required element of her *prima facie* case, save for her claims with respect to PTAB-2015-0033, PTAB-2015-0034, PTAB-2015-0043, PTAB-2015-0031, PTAB-2015-0030, and PTAB-2015-0040. However, for the purpose of a fair and full evaluation of her claims, and assuming Complainant had even stated a *prima facie* case, for purposes of this FAD only only, it will be assumed that Complainant established a *prima facie* case of discrimination under Title VII by proving each element of her *prima facie* case. Therefore, the Agency's legitimate, non-discriminatory reasons will be examined.

### A.   *CP-2015-0050 and CP-2015-0014 (Patent Examiner)*

At all times, the Agency has stated it selected applicants that were eligible for hire under veteran's preference to fill the positions for CP-2015-0050 and CP-2015-0014. Both CP-2015-0050 and CP-2015-0014 were competitive service vacancy announcements, which entitled veterans to preference over other applicants, including Complainant, in the hiring process. Facts, ¶ 13. Because Complainant was not a veteran, she did not receive any additional points on her application and was not entitled to any preference in the selection process. Facts, ¶ 14. Moreover, with respect to CP-2015-0014, the Agency articulated that Complainant was not selected because it had met its hiring quota based off of selections made from the January BQL, on which Complainant did not appear because she applied after the cut-off date. Facts, ¶¶ 25, 28. "When choosing among highly qualified candidates for a position, agencies have broad discretion to set policies and carry out personnel decisions, and should not be second-guessed by the reviewing authority absent evidence of unlawful discrimination." *Letts v. Social Security Administration*, EEOC DOC 0120082682 (June 10, 2011), 2011 WL 2433250 (E.E.O.C.) (citing *Burdine*, 450 U.S. at 259 and *Vanek v. Dep't of the Treasury*, EEOC Request No. 05940906 (January 16, 1997), 1997 WL 40412 (E.E.O.C)); *see also Payne v. USPTO*, EEOC No. 570-2014-000290X (September 25, 2015) (also citing *Burdine*). Here, the record indicates that the hiring coordinators did not select Complainant because only veterans were selected for the vacancies and the Agency had met its hiring quota by hiring from the January BQL for CP-2015-0014, which Complainant did not make. Thus, the Agency has met its burden of production to articulate a legitimate, non-discriminatory reason for its actions.

### B.   *PTAB-2014-0055; PTAB-2014-0054; PTAB-2015-0033; PTAB-2015-0034; PTAB-2015-0043, PTAB-2015-0031, PTAB-2015-0030, PTAB-2015-0040 (Administrative Patent Judge)*

Moreover, at all times, the Agency articulated that the decision for Complainant's non-selection for PTAB-2014-0055, PTAB-2014-0054, PTAB-2015-0033, PTAB-2015-0034, PTAB-2015-0043, PTAB-2014-0031, PTAB-2015-0030, and PTAB-2015-0040 was based on its determination that Complainant was not sufficiently qualified for the APJ position and/or it selected better qualified applicants. Facts, ¶¶ 28, 44-47, 55-58.

With respect to PTAB-2014-0055 and PTAB-2014-0054, the decision not to select Complainant was made based on the former Chief Judge's determination that Complainant was not entitled to further

consideration after his review of Complainant's application materials, coupled with Complainant's poor prior performance during her earlier interview. Facts, ¶ 38. The Agency policy was not to re-examine any of the applications on which the former Chief Judge had rejected. Facts, ¶ 38. Complying with its own stated policy of how to handle hiring is a legitimate, non-discriminatory reason. *See Letts*, EEOC DOC 0120082682.

Further, Complainant's non-selection for PTAB-2015-0033; PTAB-2015-0034 and PTAB-2015-0043, was made by the three-judge review panel that determined that Complainant did not possess the required qualifications for further consideration. Facts, ¶¶ 45-48. The Lead Section 17 APJ maintained that Complainant had done a limited amount of patent work in the last few years, was not as well-rounded in all areas of intellectual property as other candidates, and had a heavy focus on patent prosecution; and the Section 5 APJ also maintained that Complainant's responses to the vacancy questions failed to demonstrate that she possessed the level of experience and skill required for the job. Facts, ¶¶45, 47. The Section 15 APJ further articulated that he looked for applicants with a strong technical background, experience in prosecution and litigation, and had a "balance" across all disciplines covered by PTAB. Facts, ¶46. "It is well settled that an employer 'has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria.'" *Gladden*, 2011 WL 2619570 at *7 (citing *Burdine*, 450 U.S. at 259).

Lastly, with respect to VAN PTAB-2015-0031, PTAB-2015-0030, and PTAB-2015-0040, for which Complainant interviewed, the Agency articulated that Complainant's poor performance and application, when compared to the selectees, were the reasons for not selecting her. Facts, ¶¶ 55-58. As noted above, the Agency has wide discretion to select the applicants it deems best qualified for the positions. Therefore, I find the Agency has met its burden of production with respect to Complainant's claims of non-selection for APJ positions and rebutted any inference of discrimination.

## IV.   **FAILURE TO ESTABLISH PRETEXT**

With respect to pretext, the Supreme Court has held that once an employer has articulated a legitimate, non-discriminatory reason for its (in)action, the applicant must demonstrate pretext to prevail on her claim for discrimination. *See Burdine*, 450 U.S. at 253. A complainant may meet this burden by (1) presenting evidence that the Agency's proffered reason is not worthy of belief, thereby entitling her to an inference that discrimination was the real reason; or (2) presenting evidence that discrimination was, in fact, the employer's real reason. *See Reeves*, 530 U.S. 133.

### A.   *Patent Examiner Vacancies CP-2014-0014 and CP-2014-0050*

The Commission has held that an applicant's failure to show "a demonstrably discriminatory motive… will not [make the Commission] second-guess an agency's personnel decision." *Holstein v Dep't. of the Treasury (Internal Revenue Service)*, EEOC Appeal No. 0120065087 (May 22, 2008), 2008 WL 2264333 (E.E.O.C.) (citing *Burdine*, 450 U.S. at 259). In *Holstein*, the Commission observed that the complainant's "statements of belief and speculation that discrimination occurred … [were] insufficient to prove discrimination under law." *Id.* Thus, Complainant must establish evidence in the record beyond "statements of belief and speculation" to show pretext. Complainant alleges that she should have been selected for the patent examiner positions because she contends that her qualifications were superior to selectees and that the Agency's stated reasons for not selecting her

were improbable. Complainant believes that she should have been selected for the positon based on her experience and qualifications as a licensed patent attorney and in patent law, which she believes exceeds the skills, qualifications, and experience listed in the vacancy announcements. (ROI, Ex. 13, pp. 103, 106-107). In her rebuttal, Complainant named several patent examiners that were hired by the Agency within the last several years that she believes are less qualified than Complainant. (ROI. Ex. 49(d), pp. 1803-2091; Ex. 49(f), p. 2185; Ex. 49(g), pp. 2188-2189). Complainant believes that it is improbable that the Agency met its goals in May of 2015, since in fiscal year (FY) 2015 the Agency had a revised goal of hiring 400-600 patent examiners, and she questions why the vacancy was even posted. (ROI, Ex. 13, pp. 106-107). However, Complainant's contentions do not show evidence of pretext by the Agency

Complainant cannot compare her qualifications with the selectees because she was not similarly situated to them. *See Knapp-Huffman v. Department of Justice*, EEOC Appeal No. 01991026 (January 16, 2002), 2002 WL 110453 (E.E.O.C) (to show similarly situated, complainant must show that all relevant aspects of his or her employment situation are virtually identical to those of the other applicants who he alleges were treated more favorably). The Agency's records show that the Agency selected individuals with a veteran's preference for CP-2014-0050 and it is undisputed that Complainant did not have a veteran's preference. Facts, ¶ 14, 21. Those with a veteran's preference and sufficient qualifications (all scored at least as well or better than Complainant on the Interview Sheet) were considered and selected prior to even considering Complainant. There is no evidence of pretext when the Agency complied with its legal obligations to consider qualified veterans before considering Complainant. Thus, even assuming *arguendo* for the purposes of this FAD that Complainant had superior qualifications, where there is no evidence on this record that the selectees were unqualified (*e.g.*, lacked the required degree in science, technology, engineering, or math), Complainant's qualifications are not relevant because Complainant was not being compared to those with veteran's preference.[15]

Likewise, Complainant was not similarly situated with respect to the selectees for CP-2014-0014 because the Agency hired on the January BQL, not the March BQL on which Complainant appeared. Facts, ¶¶ 25, 27-28. Complainant contends that she applied for the "same position in September 2014." (ROI, Ex. 49(f), citing KJD000305). However, KJD000305 refers to Complainant's application for CP-2014-0073, which was a different VAN. The Agency hires off specific VANs; therefore, Complainant cannot establish pretext by claiming she applied for the position in sufficient time to appear on the January BQL because she acknowledges she applied for VAN-2014-0014 in February 2015. (ROI, Ex. 49(f)). As noted above, even assuming *arguendo* for the purposes of this FAD that Complainant had superior qualifications, the Agency looked only at the relative qualifications of those appearing on the January BQL. On this record, Complainant has not produced evidence that the selectees for CP-2014-0014 were objectively unqualified for the position. Therefore, there is no evidence of pretext with respect to the Agency's selections for CP-2014-0014.

Complainant argues that it was improbable that that the Agency had fulfilled its hiring goals by the January BQL. (ROI, Ex. 49(f)). However, whether Agency made its hiring goals for patent

---

[15]Complainant also asserts she was more qualified than other patent examiners hired in the last 3 years in the Agency's Detroit office. (ROI, Ex. 49f). Whether Complainant was more or less qualified than prior selectees is not relevant to whether the Agency discriminated against Complainant at the point in time she applied to the Agency.

examiners Agency-wide is not relevant to whether the Agency had made all the selections necessary for patent examiners in the Detroit, Michigan office in TCs 3600 and 3700. The Agency records show that TC3600 and TC3700 did not select any examiners from the March BQL. Facts, ¶ --. Therefore, the Agency's stated reason for not selecting Complainant is not incredible or otherwise unworthy of credence.

Lastly, with respect to the patent examiner vacancies, Complainant further contends that the TC 3700 SPE made certain contradictory comments and statements to her during the interview that lead her to believe that she would have been selected for the position, including: telling her that in a year she would be able to be promoted to any position within the USPTO, but then informing her that if an individual's preference did not match their needs that she may not be selected. (ROI, Ex. 13, pp. 103-104). However, TC 3700 SPE's comments, assuming they were made, are not evidence of pretext. The Interview Sheet indicates that the interviewer is to cover with each applicant how the Agency's promotion process works and that an individual whose preferences did not match Agency needs (e.g., candidate is a mechanical engineer but the Agency needs electrical engineers) may not get hired. Facts, ¶ 9. Thus, TC 3700 SPE was not being inconsistent or contradictory but merely complying with the standard interview questions and statements. On this record, Complainant has not demonstrated evidence of pretext.

In sum, Complainant has not proven pretext with respect to her non-selection for VAN-2015-0014 or VAN-2015-0050 based on her belief and speculation that the Agency selected less qualified individuals, that the Agency did not use veteran's preference, and/or that its hiring goals were not met for mechanical engineering patent examiners.

### B. Administrative Patent Judge Vacancies

In a non-selection case, a complainant may show pretext "by showing that his or her qualifications are 'plainly superior' to those of the selectee." ***4 v. Dep't of Homeland Security (Customs and Border Protection), EEOC DOC 0120140461 (March 14, 2014), 2014 WL 1125553 (E.E.O.C.) (citing Wasser v. Dep't. of Labor, EEOC Request No. 05940058 *8 (November 2, 1995), 1997 WL 777715 (E.E.O.C.). Because the Supreme Court held in Burdine that "it is not up to the applicant to select the criteria on which her application is to be judged," 450 U.S. at 259, the mere assertion of superior qualifications is not sufficient to show pretext. See ***5 v. Dep't of Transportation (Federal Aviation Administration), EEOC DOC 0120140446 at *7 (February 28, 2014), 2014 WL 899696 (E.E.O.C.). For Complainant to prove pretext by showing she had comparatively better qualifications for the position, she must show the "differences in qualifications were 'significant.'" Payne, EEOC No. 570-2014-00290X (citing Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006)).

Complainant contends that she should have been selected for the position of PTAB APJ because she possesses the same or more legal experience and education as other APJs within PTAB. (ROI, Ex. 13, pp. 108-109). Complainant contends that she should have been selected for the position because she performed well during the interview and twenty-eighty (28) of the recently hired APJs within PTAB have lesser or comparable credentials to hers. (ROI. Ex. 49(I), pp. 2248-2272 (naming several APJs were hired by the Agency within the last several years that she believes are less qualified than she is).

1.  VAN PTAB-2014-0055 and PTAB-2014-0054

In addition to Complainant's contentions regarding her qualifications, she further argues that the Agency's non-selection reasons for VANs PTAB-2014-0055 and PTAB-2014-0054 are pretext. Complainant states that because she later interviewed for an APJ position on August 18, 2015, it shows the former Chief APJ's reasoning was incredible. (ROI, Ex. 14, p. 114). However, Complainant's historical revisionism does not demonstrate pretext. Complainant obtained the August 2015 interview based on a 3-APJ panel review of her application which did not have the benefit of knowing how Complainant performed in that first interview.[16]  On this record, there is no evidence of pretext of discrimination in the former Chief Judge relying on his judgment of Complainant's application, particularly where the Agency's records show no selections from these VANs, so there is no comparison possible of Complainant's qualifications to the selectees.

2.  VAN PTAB-2015-0033, PTAB-2015-0034, PTAB-2015-0043

As above, Complainant contends her superior qualifications show there was pretext in her non-selection for the above-referenced PTAB vacancies. Even assuming *arguendo* that all three judges on the panel could infer her sex and race from her application, all three of them gave Complainant a "fail" on the initial resume review and all three articulated Complainant's relative lack of qualifications for the position. Complainant's own view of her qualifications, without more does not create evidence of pretext. *See, e.g., \*\*\*5*, EEOC DOC 0120140446; *Letts*, EEOC DOC 0120082682; and *Holstein*, EEOC Appeal No. 0120065087. All three judges independently reviewed Complainant's application and all came to the same conclusion, which undermines any inference of pretext that the panel believed Complainant was qualified enough for further consideration but was failed based on race and/or sex discrimination. Thus, Complainant has not shown pretext on this record with respect to the panel's decision to "fail" her on the application review.

3.  VAN PTAB-2015-0030, PTAB-2015-0031, PTAB-2015-0040

With respect to the APJ positions for which Complainant interviewed, the evidence in the record does not support Complainant's allegation that her qualifications as stated in her resume, application, and responses to interview questions were "plainly superior," and thus evidence of pretext. *Shondra S. v. USPTO*, EEOC DOC 0120143018 (October 8, 2015), 2015 WL 6110591 at \*7 (E.E.O.C.) (Agency hiring decisions should not be second-guessed absent evidence of unlawful motivation) (internal citations omitted).[17]  First, three (3) of the selectees were female, which undermines any evidence of pretext of sex discrimination.

Significantly, when compared to the selectees, Complainant's academic and work experiences, were either the same, or often less distinguished than the selectees. For Complainant to prove pretext by showing she had comparatively better qualifications for the position, she must show the "differences in qualifications were 'significant,'" which she cannot do on this record. *Payne*, EEOC No. 570-2014-00290X. All fourteen (14) of the selectees possessed engineering and law degrees; six (6) had advanced degrees in addition to their law degrees; three (3) clerked for federal judges; and

---

[16]The Agency was consistent in how it assessed Complainant's interviews. The APJs who interviewed Complainant in August 2015, found, like the former Chief APJ, that Complainant did not interview well enough to warrant further consideration.

[17]Beginning in October 2015, OFO now uses pseudonyms to identify cases for ease of citation.

importantly, all had continuous employment history in the IP field. Facts, ¶ 64. The interview panel all cited employment history and experience as a key reason for its recommendations (Facts, ¶¶ 55-58) and their choice of selectees is consistent with their stated reasoning. The interview panel also specifically articulated where it believed Complainant's responses fell short of other applicants'. Facts, ¶¶55-58. On this record, Complainant has not demonstrated her qualifications were so "plainly superior" to be evidence of pretext for unlawful discrimination.

Complainant also contends there was pretext in the Agency's hiring decisions, arguing that she does have the qualifications (*e.g.*, litigation experience, prior publication, member of bar associations, and dedication to IP).[18] Complainant's own belief in her qualifications, particularly where the selectees had the same or better qualifications, is not evidence of pretext for race or sex discrimination. *See* Complainant's own view of her qualifications, without more, does not create evidence of pretext. *See ***4*, EEOC DOC 0120140446; *Letts*, EEOC DOC 0120082682; *Holstein*, EEOC Appeal No. 0120065087.

Further, Complainant's reliance on selectees for APJ positions other than those selected for the above-referenced VANs is unavailing because she is not similarly situated to them. *See Knapp-Huffman*, EEOC Appeal No. 01991026. The interview panel could only consider Complainant in relation to those individuals competing for the same APJ positions; it could not consider her in comparison to those already in the position. Even assuming *arguendo* for purposes of this FAD only that Complainant was better qualified than prior-selected APJs (ROI, Ex. 49(f)), it does not make her qualifications "plainly superior" those the Agency selected from Complainant's cohort under the VANs listed above.

Complainant also contends that the length of time it took the Agency to notify her of her non-selection is not credible and is thus evidence of pretext. (ROI, Ex. 14, p. 114; Ex. 17, p. 131). Hiring APJs is a complicated process involving several steps: initial review by OHR, panel review of the BQL for interviews, panel interviews, second interview by the Vice Chief APJ and then-Acting Chief APJ, recommendation for selection by the Director of the USPTO, and appointment by the Secretary of Commerce. Facts, ¶¶ 29-35. That this process should take several months is not incredible. The record evidence does not show of other applicants receiving notification sooner than Complainant. Accordingly, the time it took to inform Complainant of her non-selection does not permit an inference of pretext.

Therefore, I find Complainant has not established evidence of pretext in the failure to select her for any of the PTAB APJ positions, and I find no discrimination in her non-selection claims.

---

[18]Complainant submitted "rebuttals" to the Agency's Counselor's Report, specifically the reported statements of an OHR employee. *See* ROI, Ex. 49(f). However, that employee did not have direct personal knowledge of the reasons for Complainant's non-selection and thus she did not provide testimony during the investigation of the formal complaint and the Agency does not rely on the OHR employee's statement, although her summarization of the facts is consistent with the Agency's articulated reasons for Complainant's non-selection.

DOWNING, 15-56-47 & 15-56-67
FINAL AGENCY DECISION
PAGE 23

## CONCLUSION

After carefully considering the entire record, and applying the legal standards outlined in detail above, I find that Complainant, Kristy Downing, failed to prove she was subject to discrimination or as alleged. As a result, this case is now closed with a finding of no discrimination.

## ATTORNEY'S FEES

As I have rendered a finding of no discrimination or retaliation an award of attorney's fees is not appropriate.

## APPEAL TO THE EEOC

You have the right to appeal the Agency's final decision to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 77960, Washington, D.C. 20013**, within 30 calendar days of your receipt of this decision. You must use Form 573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief was also submitted to the **U.S. Patent and Trademark Office, Office of EEO and Diversity, P.O. Box 1450, Alexandria, VA 22313-1450.** You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Agency's final decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If a civil action is filed, the Director of the United States Patent and Trademark Office must be named as the defendant. The Acting Director of the United States Patent and Trademark Office is Michelle Lee. The official title of the head of the Agency must also be stated. Ms. Lee's official title is **Director, United States Patent and Trademark Office.** Failure to provide the name and official title of the head of the Department may result in dismissal of the case. If a civil action is filed, we request that a copy of the civil complaint be mailed on the date of its filing to:

> **U.S. Patent and Trademark Office**
> **Office of EEO and Diversity**
> **P. O. Box 1450**
> **Alexandria, VA 22313-1450**

If a civil action is filed under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal); or under the Rehabilitation Act of 1973, as amended (discrimination due to

disability), and if a complainant does not have, or cannot afford the services of an attorney, the court may, upon a complainant's request, appoint an attorney to represent the complainant and permit the filing of the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date of receipt of this final agency decision.

Bismarck Myrick
Director, Office of EEO and Diversity
U.S. Patent and Trademark Office

8 /12 /2016
Date

Enclosure:    EEOC Form 573
              Attachment A

# New Lawsuit Check List

Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.

☑ Two (2) completed **Civil Cover Sheets.**

☐ Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.

___/___ + 2 = ___3___ **Complaints.**
# of Defendants       Total

Received by Clerk: _____ Addresses are complete: _____

Case:4:16-cv-12994
Judge: Parker, Linda V.
MJ: Grand, David R.
Filed: 08-17-2016 At 11:16 AM
CMP KRISTY J. DOWNING V MICHELLE LEE (LG)

☐ If any of your defendants are **government agencies:**
Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General.

| **If Paying The Filing Fee:** | **If Asking That The Filing Fee Be Waived:** |
|---|---|
| ☑ Current new civil action filing fee is attached.<br><br>Fees may be paid by check or money order made out to:<br><br>*Clerk, U.S. District Court*<br><br>Received by Clerk: _____ Receipt #: 0951/05 | ☐ Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br><br><br><br><br>Received by Clerk: _____ |

**Select the Method of Service you will employ to notify your defendants:**

| Service via Summons by Self | Service by U.S. Marshal (Only available if fee is waived) | Service via Waiver of Summons (U.S. Government cannot be a defendant) |
|---|---|---|
| ☑ Two (2) completed **summonses** for each defendant including each defendant's name and address.<br><br><br><br><br><br>Received by Clerk: _____ | ☐ Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint.<br><br>☐ Two (2) completed **Request for Service by U.S. Marshal** form.<br><br><br>Received by Clerk: _____ | ☐ You need not submit any forms regarding the Waiver of Summons to the Clerk.<br><br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br><br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

**Clerk's Office Use Only**

Note any deficiencies here:

# CIVIL COVER SHEET

County in which action arose: Wayne, Michigan

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Case:4:16-cv-12994
Judge: Parker, Linda V.
MJ: Grand, David R.
Filed: 08-17-2016 At 11:16 AM
CMP KRISTY J. DOWNING V MICHELLE LE
E (LG)

## I. (a) PLAINTIFFS

Kristy J. Downing

**(b)** County of Residence of First Listed Plaintiff   Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wayne
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se
4065 Radcliff Dr.
Canton, Michigan 48188

Attorneys *(If Known)*

US PTO, Office of EEO & Diversity
P.O. Box 1450, Alexandria, Virginia 22313-1450

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [X] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**     **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 367 Health Care | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander    Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   [ ] 368 Asbestos Personal Injury Product   [ ] 340 Marine    Liability | | [ ] 840 Trademark | [ ] 460 Deportation  [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [X] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | [ ] 720 Labor/Management | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| [ ] 195 Contract Product Liability | Product Liability   [ ] 380 Other Personal | Relations | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| [ ] 196 Franchise | [ ] 360 Other Personal Injury    Property Damage | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury -   [ ] 385 Property Damage | [ ] 751 Family and Medical Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| | Medical Malpractice   Product Liability | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment   [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations   [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities—   [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | Employment   **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities—   [ ] 540 Mandamus & Other    Other   [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 2000e et seq.

Brief description of cause:
Gender discrimination and retaliation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 350,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE                                    DOCKET NUMBER

DATE
August 17, 2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

## ...SUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                         ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other       ☐ Yes
            court, including state court? (Companion cases are matters in which   ☒ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes : _____