IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |
|---|---|
| KRISTY DOWNING,<br><br>    *Plaintiff,*<br><br>  v.<br><br>MICHELLE LEE, DIRECTOR OF THE U.S.<br>PATENT AND TRADEMARK OFFICE,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil No. 1:16-cv-1511
Hon. Liam O'Grady
Hon. Michael S. Nachmanoff

## **MEMORANDUM OPINION**

  Plaintiff Kristy Downing, proceeding *pro se*, filed this Title VII suit against Defendant

Michelle Lee, Director of the U.S. Patent and Trademark Office (USPTO) in the U.S. District

Court for the Eastern District of Michigan. On December 6, 2016, the case was transferred to the

Eastern District of Virginia. On February 13, 2017, the Court denied Plaintiff's motion for a

preliminary injunction.[1] Defendant has now moved for summary judgment on five of the eleven

claims (Counts 1-5), and for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for

three others (Counts 6-8). (Dkt. Nos. 60, 61). Defendant has further moved for dismissal

pursuant to Federal Rule of Civil Procedure 12(b)(1) on three claims (Counts 9-11). (Dkt. No.

59). Plaintiff has conceded dismissal for Counts 9-11. *See* Pl.'s Opp'n to MSJ at 1, Dkt. No. 71.

Plaintiff has opposed Defendant's motions with respect to Counts 1-8 and has moved for

summary judgment on Count 4. (Dkt. Nos. 55, 71). The parties have fully briefed these matters,

---

[1] Following the denial of Plaintiff's motion, the Court gave Plaintiff leave to amend her complaint for the second
time, and she did so on March 2, 2017. Second Am. Compl., Dkt. No. 50. The Court had previously allowed
Plaintiff to amend her complaint on February 1, 2017. First Am. Compl. Dkt. No. 38.

and the Court determined that a hearing was not necessary for the resolution of the pending motions.

In addition to these dispositive motions, Plaintiff has moved for Rule 11 sanctions against opposing counsel (Dkt. No. 73), and for relief pursuant to Rule 60(b) from the Court's prior order denying her motion for a preliminary injunction. (Dkt. No. 53). The parties have fully briefed these matters as well.[2]

Upon consideration of these motions, and for good cause shown, the Court hereby **GRANTS** Defendant's unopposed Motion to Dismiss Counts 9-11 with prejudice. Further, for the following reasons, the Court finds good cause to **GRANT** Defendant's Motion for Summary Judgment on Counts 1-5, **GRANT** Defendant's Motion to Dismiss Counts 6 and 7, **GRANT** Defendant's Motion to Dismiss Count 8 with prejudice, and **DENY** Plaintiff's Motion for Summary Judgment on Count 4. The Court also finds good cause to **DENY** Plaintiff's Motion for Rule 11 Sanctions and **DENY** Plaintiff's Rule 60(b) Motion for Relief.

After setting forth the factual background of the case and outlining the applicable legal standards under Title VII, the Court will address each of the substantive Counts in turn. Once the Court has analyzed the dispositive motions, it will then address Plaintiff's motion for Rule 11 sanctions and her Rule 60(b) motion for relief.

## I. BACKGROUND

Plaintiff has been a frequent applicant to various patent examiner and administrative patent judge positions at the USPTO's Detroit and Alexandria locations. Plaintiff's claims in this case revolve around her non-selection or non-hire for patent judge positions PTAB-2014-0054 and PTAB-2015-0055 and patent examiner positions CP-2015-0050, CP-2015-0014, CP-2016-0028, CP-2016-0017, and CP-2016-0059, as well as her denial of access to Defendant's

---

[2] Plaintiff also filed a notice on July 5, 2017 relating to her Rule 60(b) motion. (Dkt. No. 80).

Detroit office on July 28, 2015.  Also relevant to Plaintiff's claims is a July 27, 2012 incident at Defendant's Detroit office.

### A.    USPTO Hiring Procedure

The USPTO uses the same general hiring procedure for its patent judge and patent examiner positions.  In accordance with Office of Personnel Management (OPM) policy, as laid out in its Delegated Examining Operations Handbook (Handbook), the USPTO's Office of Human Resources first places applicants into quality categories: "best qualified" applicants, "well qualified" applicants, and "qualified" applicants.  Leung Aff. ¶ 6, Dkt. No. 64-4; Handbook at 42, Dkt. No. 64-5.  The office then assembles a "certificate of eligibles" list made up of the "best qualified" applicants; this list is called the "best qualified" list.  Handbook at 83. Subject matter experts then review the applications of those on the "best qualified" list and decide which applicants to interview.  Leung Aff. ¶ 6.

### B.    Administrative Patent Law Judge Positions

In addition to the seven positions that are at issue in this case, Plaintiff has applied to at least eight other posts in the USPTO.  Pl.'s Opp'n to MTD, Ex. B, Dkt. No. 47 (Pl.'s Application Status List).  To date, she has not been selected for any of them.

On one occasion, Plaintiff's application for an administrative patent judge position (PTAB-2013-0014) was rejected because her "score was not high enough to be referred."  *Id.* On a separate occasion, a three-judge panel reviewed Plaintiff's application for another administrative patent judge position and issued an invitation to interview in Defendant's Detroit office.  Pl.'s Mtn. for Prelim. Inj., Ex. D at 10, Dkt. No. 7 (Final EEO Decision).  A different, four-judge panel interviewed Plaintiff for that position and decided not to hire her based on her answers in the interview.  *Id.* at 11.  One of the interviewing administrative patent judges,

Beverly Bunting, provided the following testimony in an affidavit made in response to one of

Plaintiff's EEO complaints:

> I did interview [Plaintiff] . . . The interview was sometime in August, 2015.  With respect to [Plaintiff's] performance, the interview panel had concerns based on [Plaintiff's] response to some of our questions.  For example, because we work on three judge panels, we asked a question directed to how [Plaintiff] would handle a potential conflict of opinion with other panel members regarding the disposition of a matter.  We had a concern with [Plaintiff's] response and approach to facilitate agreement.  We asked another question directed to how [Plaintiff] would handle the bias of another panel member towards a party (e.g. patent troll).  I do recall that we asked her a couple of questions to try to coach her towards the answer we were looking for, and even with this coaching, she still stayed firm in her approach.

Bunting Aff. ¶ 7, Dkt. No. 64-20.

These previous rejections provide some background for the positions at issue in this

lawsuit.

### 1.    PTAB-2014-0054 and PTAB 2014-0055

In September 2014, Plaintiff applied for two administrative patent law judge positions,

PTAB-2014-0054 and PTAB-2014-0055.  Second Am. Compl. ¶ 32.  Though she made the "best

qualified" list for each of these positions, Plaintiff was not hired for either.  *Id.* ¶¶ 33–34.  Then-

Chief Judge James D. Smith of the Patent Trial and Appeals Board reviewed Plaintiff's

applications for the positions.  Smith Decl. ¶ 2, Dkt. No. 64-18.  In his declaration, Chief Judge

Smith states that he did not grant her an interview because other judges who took part in

Plaintiff's past interview for an administrative patent judge position had made clear that

Plaintiff's answers "showed her to be an unsuitable candidate."  *Id.* ¶ 4.

Plaintiff identifies three males, Garth Baer, Kamran Jivani, and Nabeel Khan, who were

hired for these positions, all of whom she alleges to have fewer years of patent experience than

she.  Second Am. Compl. ¶¶ 34–36.  Plaintiff does not provide evidence to support this assertion.

4

## C.   Patent Examiner Positions

Plaintiff applied to five separate patent examiner positions.  She was not selected for any of them.  Four of these were straightforward non-selections.  For the fifth position, Plaintiff was initially selected, but the USPTO later revoked her conditional offer of employment.

### 1.   CP-2015-0050

Plaintiff applied to patent examiner position CP-2015-0050 on February 26, 2015. Second Am. Compl. ¶ 14.  As is the case with the USPTO's general hiring policy, the OPM's Handbook governs hiring for the USPTO's competitive-service vacancy announcements.  The Handbook sets forth a system of classifying candidates based on prior military service, with notations such as "CPS," "CP," "XP," and "TP" correlating to different levels of preference for prior military service.  Handbook at 22.  The designation "NV" applies to a non-veteran.  *Id.* The Handbook instructs that for applicants entitled to veterans' preferences, an agency should list "preference eligibles ahead of . . . non-preference eligibles within the same quality category in which they were assigned."  *Id.* at 43.  The Handbook dictates that "a selecting official may not pass over a preference eligible to select a non-preference eligible," absent grounds to do so and USPTO compliance with statutory "pass over procedures."  *Id.*  In other words, the USPTO must hire veterans on the "best qualified" list before it hires non-veterans on the same list.

The veterans' preferences requirements apply equally to positions listed at the GS-7 and GS-9 salary grade.  *Id.*  At the GS-7 grade, candidates with the CPS and CP designations are moved to the top of the highest quality category.  *Id.*  At the GS-9 grade, candidates entitled to veterans' preferences still must be placed at the top of their own quality category but are not moved into a higher quality category.  *Id.*

The USPTO selected eight individuals for CP-2015-0050.  0050 Selec. Certif., Dkt. No. 64-9.  All eight were preference eligible veterans and were on the "best qualified" list.  0050 Best Qualified List, Dkt. No. 64-1.  Plaintiff is listed as a non-veteran on the same "best qualified" list.  *Id.*  The USPTO did not select Plaintiff for the position.  0050 Selec. Certif. Plaintiff filed a formal complaint of discrimination with respect to this position and others with Defendant's internal Office of Equal Employment Opportunity and Diversity (EEO Office) on June 12, 2015.  Final EEO Decision at 2.  The Office issued a final decision finding no discrimination.  *Id.* at 23.

### 2.    CP-2015-0014

Also on February 26, 2015, Plaintiff applied to patent examiner position CP-2015-0014. Second Am. Compl. ¶ 22.  The vacancy announcement indicated that the USPTO would generate a "certificate of eligibles" list after each of three cut-off dates: January 14, 2015, March 8, 2015, and April 30, 2015.  CP-2015-0014 Vacancy Announcement, Dkt. No. 64-3.  Thus, the announcement contemplated a system of rolling hires.  Plaintiff did not appear on the first "certificate of eligibles" list generated after the January 14, 2015 deadline.  Jan. Certif. of Elig. List, Dkt. Nos. 64-7, 64-8.  Defendant hired a number of male and female individuals from that list, including Johntae King and Paul Gray.  *Id.*

Plaintiff did appear on the "certificate of eligibles" list generated after the March 8, 2015 deadline and was listed as a "best qualified" applicant.  Mar. Certif. of Elig. List, Dkt. No. 64-6. None of the individuals from the March list was selected.  *Id.*  Johntae King and Paul Gray also appeared on the March list.  *Id.*  Branch Chief Linda Majca states that these two men appeared on the March list "because their status code in the Monster Hiring Management (MHM) system had not been changed to 'hire' before the next staging areas and certificates were generated."

6

Majca Aff., Ex. 10 ¶ 6, Dkt. No. 64.  In other words, all the hires for CP-2015-0014 were selected from the January list.

In June of 2015, an individual named Angeline Premraj was hired under another patent examiner vacancy announcement, CP-2014-0073.  0073 Selec. Certif. at 44–45, Dkt. No. 68-3.

As a general practice, the USPTO sets hiring goals for its patent examiners.  In 2015, the USPTO set a nation-wide hiring goal of 340 patent examiners and hired 340 individuals for these positions.  Nov. 1, 2016 USPTO Rep. at 6, Dkt. No. 24-1.  In 2016, the USPTO set a nation-wide hiring goal of 275 patent examiners and hired 282 individuals for these positions.  *Id.*

Plaintiff filed a formal complaint of discrimination with respect to CP-2015-0014 and other positions, including some that are at issue in this case, with Defendant's internal EEO Office on June 12, 2015.  Final EEO Decision at 2.  The Office issued a final decision finding no discrimination with respect to any position.  *Id.* at 23.

### 3.    CP-2016-0028

The hiring story for CP-2016-0028 is different from that of the other positions.  On June 30, 2016, Defendant extended Plaintiff a tentative offer of employment for patent examiner position CP-2016-0028 in Detroit, Michigan.  June 30 Letter, Dkt. No. 7-17.  The tentative offer was made contingent on background and security checks and on a "suitability determination." *Id.*; July 12 Letter, Dkt. No. 7-18.  On July 12, 2016, Plaintiff purported to accept the offer.  July 12 Reply Letter, Dkt. No. 7-19.  After doing so, Plaintiff expended significant resources moving to Detroit.  Pl.'s Opp'n to MTD, ¶ 5, Dkt. No. 16-2.  Plaintiff also withdrew nearly 100 pending job applications.  Second Am. Compl. ¶ 28.

On July 19, 2016, Defendant rescinded Plaintiff's conditional offer.  July 19 Letter, Dkt. No. 7-21.  Technology Center Director Angela Sykes made the decision to rescind the offer.

Sykes Aff. ¶¶ 1, 2, 12, Dkt. No. 64-2.  Ms. Sykes maintains that she decided to do so because Plaintiff had "been disruptive and abusive to individuals in Detroit," "exhibited some strange behavior," and "been banned from the Detroit Office for some time."  *Id.* ¶¶ 13–14.  Ms. Sykes also states that she was not aware of Plaintiff's prior EEO activity.  *Id.* ¶ 18.  Similarly, Anne Mendez, the employee who communicated concerns about hiring Plaintiff to Ms. Sykes, says that she was unaware of Plaintiff having any prior EEO activity.  Mendez Aff. ¶ 5, Dkt. No. 64-11.  Ms. Mendez also refers to an August 2015 incident involving security, during which Ms. Mendez says Plaintiff was "behaving bizarrely" in a USPTO reception area.  *Id.* ¶ 14.

### 4.    CP-2016-0017 and CP-2016-0059

Plaintiff's allegations with respect to these positions are sparse.  In April and July of 2016, Plaintiff applied to patent examiner positions CP-2016-0017 and CP-2016-0059.  Second Am. Compl. ¶¶ 38, 42.  Plaintiff was neither interviewed nor hired for these positions and claims that less-qualified individuals were hired.  *Id.* ¶¶ 39, 43.  Plaintiff alleges that the individuals in charge of hiring for CP-2015-0014 and CP-2015-0050 were in charge of hiring for these positions, though she does not identify these individuals by name or provide a source for this allegation.  *Id.*

### D.    July 27, 2012 Incident

On July 27, 2012, Plaintiff was involved in a dispute at Defendant's Detroit office, which she had visited to use the Public Search room.  Alexander Aff., FOIA Req. at 2, Dkt. No. 64-12. Shortly after entering, Plaintiff was involved in a verbal dispute with a USPTO employee, Ms. Imelda Anekwe, in which Plaintiff told Ms. Anekwe to go sit down and said that "she doesn't like people around her or looking at her."  *Id.* at 8 (July 27, 2012 Incident Report).  Later that day, upon exiting the building, Plaintiff said that she "would take care of" Ms. Anekwe if she

ever followed her out of the building again. *Id.* Plaintiff also interacted with the security officer on duty, Sean McCarron, asking him why he was at his post and saying that "he shouldn't be there." *Id.* Office security investigated the incident and prepared a report the same day. *Id.* Three days later, FPS Inspector Steven Harkle came to the office, interviewed witnesses, and issued a case number to record the incident. *Id.* On August 1, 2012, the USPTO Office of Security and Safety requested that plaintiff be "restricted from our space." *Id.* at 14 (internal USPTO email from Senior Special Agent Kevin Lewis in the Office of Security).

On September 5, 2012, Plaintiff contacted USPTO security asking for information related to the July incident. *Id* at 16. A security log from that day indicates that security officers communicated about "Kristy Downing being band [sic] from PTO-Detroit." *Id.* at 13 (Operational Log). Plaintiff then filed a request pursuant to the Freedom of Information Act (FOIA) seeking records related to this incident. *Id.* at 2 (Alexander Aff.). The USPTO responded to this request on October 2, 2012. *Id.* On October 18, 2012, Plaintiff appealed the USPTO's response to her FOIA Request. FOIA Appeal Letter, Dkt. No. 64-13. As a result of this appeal, Plaintiff received a video depicting part of her trip to the USPTO on July 27, 2012. *Id.*; Pl.'s 2nd Rule 56(d) Aff. at 5, Dkt. No. 71-3.

On December 31, 2012, Plaintiff filed a lawsuit alleging sexual harassment, malicious prosecution, and defamation as a result of the July incident. Pl.'s Hearing Exhibits, Ex. 3, Dkt. No. 35-3 (Pl.'s 2012 Compl.). The action was dismissed with prejudice on April 12, 2013 as the result of a stipulated order of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *Id.* Ex. 4, Dkt. No. 35-5 (Civil Dismissal Order). Plaintiff was also criminally charged as a result of this incident, but those charges were dismissed on March 29, 2013. *Id.* Ex. 2, Dkt. No. 35-3 (Criminal Dismissal Order).

**E.**      <u>July 28, 2015 Denial of Access</u>

The issue of Plaintiff's ban came up again on July 28, 2015, when Plaintiff responded to an advertisement for a special event at Defendant's Detroit office. Second Am. Compl. ¶ 45. Upon Plaintiff's arrival, a security officer denied her access to the building. *Id.* That same day, Plaintiff emailed Mr. Raymond Patten in the Detroit USPTO Office; the email reads: "This morning I was denied access to the Detroit PTO Office by an officer D. Bugor without explanation. He indicated that someone in the security department in Virginia told him to deny me access. What explains this? It needs to be remedied immediately." Pl.'s Hearing Exhibits, Ex. 5. In response, Mr. Patten indicated that Plaintiff's "access to the Detroit office ha[d] been restored." *Id.*

## II. LEGAL STANDARD

Because this case comes before the Court on a motion for summary judgment and a motion to dismiss, it is appropriate to discuss both standards. The legal standards for Plaintiff's Rule 60 and Rule 11 motions are discussed separately below, along with the relevant analysis under those standards.

When considering a motion for summary judgment under Rule 56, the Court will grant the motion if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the initial burden of showing a court the basis for its motion and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party has the burden of showing, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("To avoid summary judgment, the non-moving party's evidence must be of sufficient quantity as to establish a genuine issue of material fact for trial.") (emphasis removed).

A dispute of material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, "[f]anciful inferences and bald speculations of the sort no rational trier of fact could draw or engage in at trial need not be drawn or engaged in at summary judgment." *Clinchfield Coal Co.*, 124 F.3d at 640. To defeat a summary judgment motion, the existence of specific material evidentiary facts must be shown. *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411–412 (4th Cir. 1986). Self-serving affidavits alone, however, will not defeat a motion for summary judgment. *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *see also Simard v. Unify, Inc.*, No. 1:15-cv-1649, 2016 U.S. Dist. LEXIS 92321, at *14 (E.D. Va. July 15, 2016) ("Where assertions made by affidavits or declarations prepared for the motion for summary judgment are conclusory or conflict with prior statements or deposition testimony, the affidavit or declaration is insufficient to create a genuine issue of material fact.").

In general, courts will not grant motions for summary judgment when parties have not had the opportunity to engage in discovery. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 n. 5 (1986); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011). At the same time, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996). An attempt to oppose summary judgment on the grounds of insufficient discovery falls under Federal Rule of Civil Procedure 56(d), which states that a court may defer or deny a motion for summary judgment and allow discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Rule 56(d) affidavits "are broadly favored and should be liberally granted in order to protect non-moving parties from premature summary judgment motions." *McCray v. Md. DOT*, 741 F.3d 480, 484 (4th Cir. 2014) (internal quotations omitted).

On the other hand, a court may decide not to allow further discovery if a nonmovant "did not specifically allege why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment." *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995). In the absence of "some reason to question the veracity of affiants," a mere "desire to test and elaborate affiants' testimony" does not justify further discovery. *Dunning v. Quander*, 508 F.3d 8, 10 (D.C. Cir. 2007) (internal quotations omitted). An "undocumented, personal belief that further discovery somehow would show [] malice" does not justify such discovery either. *Bruette v. Montgomery Cty.*, 70 F. App'x 88, 98 (4th Cir. 2003).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible

12

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007).  A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief.  *Id.*  Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff."  *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

*Pro se* litigants are entitled to a liberal construction of their pleadings.  *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Fourth Circuit has not explicitly decided whether attorneys proceeding *pro se* are entitled to this liberal construction.  *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016) ("Although this court has not determined whether a pro se plaintiff who is also an attorney receives the benefit of this liberal construction, we need not decide that issue here: Kerr's complaint fails whether or not it is liberally construed.").  As a general matter, however, courts in this circuit allow less leeway when the party is a barred attorney as opposed to someone who has not received any legal training.  *See, e.g., Rashad v. Jenkins*, 2016 U.S. Dist. LEXIS 27879, at *8 (E.D. Va. Mar. 3, 2016) ("Rashad has asserted in his Complaint that he is a lawyer. Hence, his pleadings are not entitled to the lenient treatment accorded litigants who are proceeding without the aid of a lawyer.").

13

### III. PLAINTIFF'S TITLE VII CLAIMS

Counts 1-4 are Plaintiff's claims of gender discrimination in violation of Title VII stemming from her non-hire for two administrative patent judge positions, PTAB-2014-0054 and PTAB-2014-0055, and two patent examiner positions, CP-2015-0050 and CP-2015-0014.  Count 5 is Plaintiff's claim of retaliation in violation of Title VII with respect to the rescission of her offer of employment for one patent examiner position, CP-2016-0028.  Counts 6 and 7 are Plaintiff's claims of retaliation in violation of Title VII in relation to her non-hire for two patent examiner positions, CP-2016-0017 and CP-2016-0059.  Count 8 is Plaintiff's claim of retaliation in violation of Title VII arising from her denial of access to Defendant's Detroit office on July 28, 2015.

This section will first address the relevant legal framework and explain why summary judgment is appropriate at this time.  It will then analyze the substance of each of Plaintiff's individual claims.

### A.    The McDonnell-Douglas Framework

There are two "avenues of proof" through which a plaintiff may establish discrimination under Title VII: a plaintiff may either "demonstrat[e] through direct or circumstantial evidence that sex or age discrimination motivated the employer's adverse employment decision" or may proceed under the *McDonnell Douglas* burden-shifting framework.  *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, a plaintiff states a prima facie case of employment discrimination by showing that "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected

14

for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination." *Ransom v. Danzig*, 69 F. Supp. 2d 779, 785 (E.D. Va. 1999). The fourth prong requires a plaintiff to demonstrate that "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802.

If a plaintiff establishes a prima facie case of employment discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* The stated reason must be one which "fairly could be recognized as a reasonable basis for a refusal to hire." *Id.* at 802–03. An employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).

The existence of OPM procedures—including veterans' preferences procedures—that mandate the hiring of certain individuals constitutes a legitimate, nondiscriminatory reason for an individual's non-hire. *Ransom*, 69 F. Supp. 2d at 786 (finding that OPM's "Rule of Three" was a legitimate, nondiscriminatory reason not to hire plaintiff); *Keyes v. Secretary*, 853 F.2d 1016, 1027 (1st Cir. 1988) ("Having correctly ruled that Lt. Atkins was entitled to veterans' preference, the district court found, supportably, that plaintiff's failure to obtain the SSSA position was not the result of purposeful discrimination."). An employer may also proffer interview performance as a legitimate, nondiscriminatory reason not to hire an applicant. *Hux v. City of Newport News*, 451 F.3d 311, 319 (4th Cir. 2006) ("Interviews are an important tool that employers use to make all sorts of hiring decisions, and we may not lightly overturn the reasonable conclusions an employer reaches.").

Once an employer provides a legitimate, nondiscriminatory reason for a hiring decision, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 137 (2000). A plaintiff must provide evidence of pretext beyond bare assertions of discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (finding that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action."). If a plaintiff establishes that an employer's stated reason is pretext, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. On the other hand, an employer is entitled to judgment as a matter of law "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. at 148.

The *McDonnell Douglas* burden-shifting framework also applies in Title VII retaliation cases. *See, e.g.*, *Barker v. Comput. Sci. Corp.*, No. 1:13-cv-857, 2015 U.S. Dist. LEXIS 39994 (E.D. Va. Mar. 27, 2015). A plaintiff states a prima facie case of retaliation by showing that "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). Only employment actions "that affect employment or alter the conditions of the workplace" satisfy the second prong of this test. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 62 (2006). "A single incidence of non-admittance to a federal facility" does not constitute an

adverse employment action under Title VII. *Totten v. Norton*, 421 F. Supp. 2d 115, 121 (D.D.C. 2006) ("[E]ven if one assumes that the non-admittance was causally connected to that activity, plaintiff cannot prevail on his [retaliation] claim because he fails to allege that he suffered any actionable adverse action by his employer.").

An employer's knowledge of an employee's discrimination charge is sufficient to satisfy the "causality" prong of the prima facie case. *Williams*, 871 F.2d at 457. At the same time, a failure to allege this knowledge justifies dismissal of a claim for retaliation under Title VII. *Chamblee v. Old Dominion Sec. Co., L.L.C.*, No. 3:13-cv-820, 2014 U.S. Dist. LEXIS 50726, at *21–22 (E.D. Va. Apr. 10, 2014) ("Because the Complaint does not allege sufficient facts to support a reasonable inference that Ellis knew of the complaints, the Complaint fails to set forth a causal link between Chamblee's protected activity and his termination. Therefore, the Complaint fails to state a claim for retaliatory termination."). Although "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Once a plaintiff makes a prima facie case of retaliation, a defendant employer may then rebut this case by "articulating non-retaliatory reasons for its actions." *Carter*, 33 F.3d at 460. The burden then shifts back to the plaintiff to prove that the stated reasons are pretextual. *Id.*

### B.   Summary Judgment is Appropriate

Before proceeding to the substance of Plaintiff's claims, it is important to address why summary judgment is appropriate at this stage without a formal period of discovery. Plaintiff has provided two Rule 56(d) affidavits opposing summary judgment: one before her Second

Amended Complaint and one after it. The Court liberally construes these affidavits.[3] Even with this liberal construction, however, Plaintiff's affidavits do not establish a plausible basis for additional discovery.

In her first Rule 56(d) affidavit, Plaintiff lays out a number of reasons she feels discovery is necessary. Dkt. No. 47-1 (Ex. A). First, Plaintiff claims that she needs lists of those selected for patent examiner positions CP-2015-0050 and CP-2015-0014 in order to attack Defendant's stated reason for her non-hire. *Id.* ¶¶ 23, 26. Second, Plaintiff insists that she needs an opportunity to depose the affiants who spoke to Defendant's stated reasons for her non-hire for these two positions. *Id.* ¶¶ 22, 25. Plaintiff believes these depositions are necessary because she claims to have disproven Defendant's stated reasons for non-hire, thus calling into question these affiants' credibility. *Id.* Third, Plaintiff asserts that she needs to test the veracity of a number of individuals associated with the rescission of her offer for patent examiner position CP-2016-0028: Ms. Sykes, Ms. Mendez, and those involved in the 2012 incident at Defendant's Detroit office. *Id.* ¶¶ 28, 29. She states that these depositions are necessary because of her claims that the 2012 incident was not a legitimate reason for her non-hire. *Id.* ¶ 28. Finally, Plaintiff claims that she needs information about "standard PTO security clearance procedures" and "whether this termination was done pursuant to the condition in the offer letter." *Id.*

None of these is a valid reason to delay summary judgment in this case. As an initial matter, Plaintiff has received all the documentary evidence she requested in her first affidavit. Specifically, in response to Plaintiff's demands, Defendant voluntarily provided the lists Plaintiff requested of those selected for patent examiner positions CP-2015-0050 and CP-2015-0014. 0050 Selec. Certif.; 0014 Selec. Certif. Moreover, Defendant has produced sworn affidavits and

---

[3] Though Plaintiff is an attorney, she is entitled to some degree of leniency because she is proceeding *pro se* and because of the broad construction of Rule 56(d) affidavits. *See McCray*, 741 F.3d at 484.

declarations from Ms. Mendez, Ms. Sykes, and Chief Judge Smith. Thus, Plaintiff can no longer point to any documentary evidence that she would legitimately seek in discovery.

Further, Plaintiff has not demonstrated a need for documents detailing "standard PTO security clearance procedures." Pl.'s 1st Rule 56(d) Aff. ¶ 28. Presumably, Plaintiff wants these documents in order to question her ban from Defendant's Detroit office. But Plaintiff received a number of documents about the ban pursuant to her FOIA Request, and she does not indicate why she needs evidence of standard security clearance procedures when she has extensive evidence from Defendant of the circumstances surrounding her own ban. Nor does Plaintiff require further discovery to determine "whether [the rescission of her conditional offer for CP-2016-0028] was done pursuant to the condition in the offer letter." *Id.* Plaintiff has the offer letter, and she has the affidavits of those who rescinded her offer—in fact, she cites those documents in her own affidavit. Plaintiff does not identify any more documents necessary to decide this question of fact, and there do not appear to be any.

Finally, Plaintiff has not presented any legitimate need to depose the affiants on whose testimony Defendant has relied for these patent examiner positions. For reasons that will be more fully explored below, none of Plaintiff's attempts to discredit Defendant's legitimate reasons for non-hire creates a genuine dispute as to those explanations. Because Plaintiff's arguments do not cast any doubt on the veracity of the affidavits, Plaintiff is left with only an "undocumented, personal belief that further discovery somehow would show [] malice," which the Fourth Circuit has made clear does not justify such discovery. *Bruette*, 70 F. App'x at 98.

In her second Rule 56(d) affidavit, Plaintiff presents more reasons she feels that she needs discovery. Pl.'s 2nd Rule 56(d) Aff. First, Plaintiff seems to reiterate her need for the selection certificates for patent examiner positions CP-2015-0050 and CP-2015-0014 by citing

the paragraphs of her first affidavit in which she expressed that need. *Id.* ¶ 1. Second, Plaintiff insists that she needs to depose Chief Judge Smith, relying on two of her arguments against Chief Judge Smith's stated reason for not hiring her. *Id.* ¶¶ 2, 4. Third, Plaintiff claims a need to depose Chief Judge Smith as to normal hiring procedures. *Id.* ¶ 5. Fourth, Plaintiff states that she needs to evaluate the "integrity" of the Majca Affidavit due to her own personal experience with hiring procedures at the USPTO. *Id.* ¶¶ 7–10. Finally, Plaintiff notes that she has received a number of documents and a video related to the July 2012 incident as a result of her FOIA Request and subsequent appeal of that request, but claims that she needs the full, hour-long video of her visit that day. *Id.* ¶¶ 11–12.

Once again, Plaintiff presents no legitimate reason for further discovery in this case. First, as noted above, Defendant has provided the selection certificates that Plaintiff inexplicably states that she needs. Second, Plaintiff has presented no reason beyond her "undocumented, personal belief that further discovery somehow would show [] malice" to depose Chief Judge Smith. *Bruette*, 70 F. App'x at 98. For reasons that will be fully explained below, both of Plaintiff's attempts to impeach Chief Judge Smith's testimony fall flat. Third, Plaintiff does not need to depose Chief Judge Smith about hiring procedures—she received details of the procedures in the Final Agency Decision, which she has cited and attached as an exhibit a number of times. Final Agency Decision at 7. Fourth, Plaintiff's own experience at the USPTO is not sufficient reason to question the credibility of a sworn affidavit that is supported by documentary evidence. Jan. Certif. of Elig. List. Even if it were, Plaintiff has the relevant certificate of eligibles lists and affidavits. Finally, as Plaintiff indicates, she has received extensive evidence of her ban from Defendant's Detroit office through her FOIA Request and subsequent appeal. Defendant has

already complied with the FOIA Request and the appeal process—it is not clear what Plaintiff could receive in discovery that she has not received already.[4]

In sum, there is a voluminous amount of evidence in this case, all of which has been made available to Plaintiff through voluntary submissions by Defendant and other avenues like Plaintiff's FOIA Request. Ironically, Plaintiff cites much of this evidence in claiming that she needs discovery. More discovery is appropriate where "most of the key evidence lies in the control of the moving party." *McCray*, 741 F.3d at 484. In this case, Plaintiff has all of the key evidence, including (1) documents detailing Defendant's hiring practices generally; (2) Defendant's hiring practices for these types of positions; (3) Defendant's hiring process and ultimate decisions for these specific positions; (3) affidavits from the individuals responsible for Defendant's hiring decisions; (4) a full documentary record of Plaintiff's incident on July 27, 2012; (5) internal emails detailing Plaintiff's ban from the Detroit PTO office; and (6) a plethora of other related documents and affidavits. Having determined that there is no need for additional discovery in this case, the Court turns to the merits of Plaintiff's claims.

### C.   **Gender Discrimination (Counts 1-4)**

#### 1.   **Counts 1 and 2: PTAB-2014-0054 and PTAB-2014-0055**

First, Defendant has moved for summary judgment on Plaintiff's claims arising from administrative patent law judge positions PTAB-2014-0054 and PTAB-2014-0055. In support of its motion, Defendant relies on the testimony of Chief Judge Smith to provide past interview performance as a legitimate, nondiscriminatory reason not to hire Plaintiff. In response, Plaintiff attacks Chief Judge Smith's credibility and advances a number of factors that she believes give rise to an inference of discrimination. Plaintiff also advances another reason she believes

---

[4] The Court also notes that in her Motion for Rule 11 sanctions, Plaintiff concedes that "[t]he FOIA request was 'all' inclusive, accordingly no additional records on the incident will surface." Mot. for Sanctions at 13.

summary judgment to be inappropriate—the "subjective" nature of interview performance. Objectively, these arguments have no merit.

Defendant has proffered a legitimate, nondiscriminatory reason for deciding not to interview Plaintiff: Chief Judge Smith's testimony that he decided not to interview Plaintiff based on her performance in past interviews. Since interview performance is a legitimate basis on which to rest employment decisions, *see Hux*, 451 F.3d at 319, the burden shifts back to Plaintiff to demonstrate that there is a genuine dispute of material fact as to whether interview performance is a mere pretext for gender discrimination.

In attempting to show pretext, Plaintiff first alleges that Chief Judge Smith's affidavit is self-serving and thus should not carry much weight at the summary judgment stage. Pl.'s Opp'n to MSJ at 15. His affidavit, however, is not the sort of conclusory or conflicting statement of which the Court should be wary. First of all, it is supported by his investigation into Plaintiff's interview performance. This is not a conclusion that he reached based on speculation or prejudice; instead, Chief Judge Smith clearly lists the source of his information—his administrative law judge colleagues. Second, it is corroborated by the independent responses of judges who interviewed Plaintiff on August 18, 2015 and found her unsuitable for the position. These judges include Ms. Bunting, whose affidavit detailed the reasons Plaintiff had been unsuccessful in other interviews. *See* Bunting Aff., Dkt. No. 64-20.

Moreover, it is worth noting that Chief Judge Smith has no personal stake in this case. He has only an attenuated professional interest in hiring qualified candidates—he does not stand to reap any personal or financial benefit through the claims in his affidavit. In short, Plaintiff cannot offer anything beyond her own self-serving affidavits that would lead the Court to discount Chief Judge Smith's statements.

Plaintiff also claims that there are problems with Defendant's proffered explanation because she later received an interview for a similar position in Defendant's Detroit office. *Id.* at 16. She states that this later interview is evidence that the prior interview on which Chief Judge Smith claims to have relied was "not so poor as to make her ineligible for all future consideration on later positions." *Id.* Because Chief Judge Smith was not the decision-maker responsible for the August 18, 2015 interview, the occurrence of that interview only impeaches Chief Judge Smith's credibility if the three-judge panel that decided to interview Plaintiff was also aware of the previous interview on which Chief Judge Smith relied. There is no evidence that any of those judges was aware of that previous interview, so the fact that they granted her an interview in 2015 does not impeach Chief Judge Smith's credibility.

Plaintiff next claims that she is entitled to an inference of discrimination based on her allegation that Defendant hired males with fewer years of patent experience. *Id.* In her view, this discrepancy tends to prove that Defendant's stated legitimate, nondiscriminatory reason for non-hire is a pretext. However, because an employer "has discretion to choose among equally qualified candidates," Defendant's hiring of these individuals gives rise to an inference of discrimination only if they are differently qualified, in a relevant sense, from Plaintiff. *See Burdine*, 450 U.S. at 259.

Plaintiff does not contend that those hired in her stead were not also on the "best qualified" list, and the Court cannot say that other candidates on the "best qualified" list were less qualified simply because they had been working for fewer years. Years of experience is only one factor that may go into an employment decision—Plaintiff has not presented any evidence about the candidates' substantive experience, training, relevant education, interview performance, or any of their other attributes that may bear on their success as administrative

23

patent law judges. In addition, while she alleges that she has more years of experience, she does not elaborate what kind of experience she had. And because Plaintiff has not provided a source for her claims about the individuals hired instead of her, it is impossible for the Court to compare their experience to hers. The Court cannot infer simply from their "years of experience" that these individuals are so much less qualified than Plaintiff. *See Liggett v. Rumsfeld*, No. 04-1363, 2005 U.S. Dist. LEXIS 34162, at *25 (E.D. Va. Aug. 29, 2005) (granting defendant's motion for summary judgment because plaintiff "does not state the qualifications of the applicants selected for the positions, so the Court does not know whether or not they were more or less qualified than [plaintiff]. [Plaintiff] has not alleged sufficient facts to give rise to an inference of unlawful discrimination.").

Plaintiff also argues that her 2012 claim of sexual harassment and Defendant's three-year delay in responding to one of her other applications give rise to an inference of discrimination. Pl.'s Opp'n to MSJ at 16. But Plaintiff has suggested no link between Chief Judge Smith's decision not to interview her and her 2012 claim, and there does not appear to be one. There is no apparent reason why Chief Judge Smith would know of this claim, and Plaintiff does not present evidence that he did. Even if he did know of Plaintiff's claim, that claim is not probative of gender discrimination because there was no opportunity for proof to be adduced and the complaint was dismissed with prejudice. Similarly, Plaintiff provides no explanation as to why a delay in a different job application bears on the truth of Defendant's proffered explanation of prior interview performance.

Plaintiff next claims that summary judgment is inappropriate because Defendant relied on "vague and subjective considerations" or "subjective feelings" in deciding not to hire her. *Id.* at 19. Contrary to Plaintiff's assertions, Chief Judge Smith stated that he based his decision not to

interview Plaintiff on her prior interview performance as evaluated by past interviewing judges, who found her responses to interview questions unsatisfactory. This explanation is neither vague nor subjective—it is rooted in Chief Judge Smith's knowledge of Plaintiff's own answers in a prior interview, as assessed by three established administrative law judges. Because the law Plaintiff cites is inapplicable to Defendant's stated reason for non-hire, this part of her claim does not stand in the way of summary judgment.

### 2.    Count 3: CP-2015-0050

Defendant has moved for summary judgment with respect to Plaintiff's discrimination claim for patent examiner position CP-2015-0050. In support of its motion, Defendant has provided evidence that it hired only individuals entitled to veterans' preferences, as required by OPM rules. Defendant has therefore satisfied its burden under *McDonnell Douglas* and the burden shifts back to Plaintiff to demonstrate that there exists a genuine issue of material fact as to whether veterans' hiring preferences served as a pretext for gender discrimination in this instance. She fails to do so.

Plaintiff argues that veterans' hiring preferences did not preclude Defendant from hiring her because those chosen for the position are substantially less qualified than her and are thus not similarly situated applicants within the meaning of the OPM policy. Second Am. Compl. ¶¶ 16, 20. This argument flatly misreads the relevant OPM Policy. Plaintiff does not dispute that those selected are within the same "best qualified" list, but she claims that she is more qualified as a result of her law degree and years of experience. *Id.* OPM policy, however, does not allow subjective weighing of experience when veterans' preferences are implicated; it mandates that Defendant select veterans from the "best qualified" list before non-veterans from that same list. Handbook at 43. Qualified veterans are simply preferred for these positions—there is no

comparison. Because Plaintiff does not dispute the existence or validity of the policy in question, and because she admits that those selected were also on the "best qualified" list, she is unable to call into question Defendant's stated reason for her non-selection.

Plaintiff next argues that because GS-9 candidates are not moved into a higher quality category, Defendant improperly selected candidates from the GS-7 "best qualified" list. Pl.'s Opp'n to MSJ at 4. This argument is also based on a misunderstanding of the policy. This part of the policy simply dictates that veterans already qualifying for the GS-9 salary grade do not get moved into a higher quality category, but they still receive preference within quality categories. Handbook at 43. Since Plaintiff does not contest that those hired in her stead were also on the "best qualified" list, this policy has no bearing on Defendant's explanation. In sum, Plaintiff's discussions of the OPM hiring policy do not provide any evidence that Defendant's proffered reason of veterans' preferences is pretextual. Therefore, summary judgment is appropriate.

### 3. Count 4: CP-2015-0014

Plaintiff and Defendant have filed cross-motions for summary judgment for Plaintiff's claim stemming from patent examiner position CP-2015-0014. In support of its motion, Defendant advances a legitimate, nondiscriminatory reason not to hire Plaintiff—it had met its hiring goals for the position before she applied. Thus, even if Plaintiff could make out a prima facie case of discrimination, this unrebutted explanation precludes any hint of pretext.

Plaintiff's claim fails in the first instance because she cannot show a possibility that "the position remained open and the employer continued to seek applicants." *McDonnell Douglas*, 411 U.S. at 802. In response to Plaintiff's contentions, Defendant has produced evidence to demonstrate that it selected only applicants from the January "certificate of eligibles." Defendant has also shown that, contrary to Plaintiff's assertions, Johntae King and Paul Gray

26

were hired from the January certificate.  Defendant has provided a rational and substantiated explanation as to why they appeared on the March certificate as well—"their status code in the Monster Hiring Management (MHM) system had not been changed to 'hire' before the next staging areas and certificates were generated."  Majca Aff. ¶ 6.  This explanation is set forth in a sworn affidavit from the Branch Manager, Ms. Majca, and the Court has no reason to doubt its veracity.

Additionally, Defendant has rebutted Plaintiff's claim that Angeline Premraj was hired from vacancy announcement CP-2015-0014 by providing the selection certificate from which Ms. Premraj was chosen.  0073 Selec. Certif. at 44–45.  Plaintiff did not apply to this announcement and does not base any of her claims on it.  Therefore, Ms. Premaj's selection is wholly irrelevant to Plaintiff's claims.  Accordingly, the unrebutted evidence shows that, although the March certificate was created, no individuals were hired from it and Defendant had finished hiring for the positions to which Plaintiff had applied.  Thus, Defendant is entitled to summary judgment on Count 4 and Plaintiff's motion for summary judgment must be denied.

In the alternative, even if Plaintiff could make a prima facie case of discrimination, Defendant has provided an unrebutted legitimate, nondiscriminatory reason for not hiring her: the position had been filled by the time Plaintiff applied.  Plaintiff advances a number of arguments in attempting to establish that this stated reason is pretextual.  None of these arguments has merit, and because the Court has already determined that Plaintiff cannot make a prima facie case, they will be addressed only briefly.

First, Plaintiff rehashes her arguments that Defendant improperly hired Johntae King and Paul Gray in her stead.  Pl.'s MSJ Mem. at 8–11, Dkt. No. 56.  This argument fails because Mr. King and Mr. Gray were not considered against, or hired instead of, Plaintiff.  As explained

27

above, the two were hired from the January "certificate of eligibles" and appeared on the March certificate only because their status codes in the USPTO's hiring system had not been changed to "hire." Jan. Certif. of Elig. List; Majca Aff. ¶ 6. In other words, Plaintiff was simply too late in her application and was never even considered against the January candidates.

Second, Plaintiff argues that because Defendant exceeded its overall hiring goals for patent examiners in 2016, it could have also exceeded its hiring goals in 2015 and these goals were thus not a legitimate reason not to hire her for CP-2015-0014. Pl.'s MSJ Mem. at 13. She also suggests that Defendant may have retroactively falsified these goals. *Id.* at 14. Rather than cast doubt on Defendant's proffered explanation, Plaintiff has strengthened it. Had Defendant exceeded its overall hiring goals in 2015, perhaps it could not have used specific hiring goals to justify not hiring Plaintiff. But Defendant meeting its hiring goals exactly is consistent with such goals being the real reason for not hiring Plaintiff. Plaintiff also submits only speculation that Defendant changed its hiring goals retroactively. In the absence of any evidence to this end, the notion that the USPTO falsified its national annual report for the narrow purposes of this lawsuit is incredible.

Finally, Plaintiff makes two tangential arguments: that Defendant did not hire her for subsequent patent examiner positions and that she filed a sexual harassment lawsuit that was dismissed before any proof was adduced. *Id.* at 10–11. Neither of these arguments is convincing. The first has no relevance whatsoever to Defendant's stated reason for not hiring plaintiff for CP-2015-0014. The second is not probative of gender discrimination because it is simply an accusation, and regardless, is not causally linked to the hiring process for this position.

For these reasons, even if Plaintiff were able to establish a prima facie case of gender discrimination, she would be unable to question that Defendant did not hire her because the position had been filled.

### D.   Retaliation (Counts 5-8)

#### 1.   Count 5: CP-2016-0028

Defendant has moved for summary judgment with respect to Plaintiff's claim stemming from patent examiner position CP-2016-0028. In support of its motion, Defendant argues that Plaintiff has not proposed any causal link between her filing of EEO complaints and the rescission of her offer. In the alternative, Defendant contends that it has offered a non-retaliatory reason—Plaintiff's prior behavior at and ban from its office—for its decision not to hire Plaintiff. These arguments are well-taken.

In response, Plaintiff presents a number of claims that she believes establish causation and rebut Defendant's non-retaliatory reason for rescission. These arguments fail because Plaintiff has not provided any basis to infer that the individual responsible for rescinding her offer, Ms. Sykes, knew of Defendant's prior protected activity. In the face of Ms. Sykes' affidavit that she did not know of prior EEO claims, Plaintiff points out that "Sykes' subordinate was interviewed in the first investigation and Sykes' name was mentioned in [the subordinate's] affidavit." Pl.'s Opp'n to MSJ at 22. This observation is not an evidentiary fact that tends to prove Ms. Sykes' knowledge. Rather, in order to accept Plaintiff's argument, the Court would have to speculate that Ms. Sykes was made aware of the contents of her subordinate's interview with the investigator simply because that interview occurred and Ms. Sykes has a supervisory relationship with the interviewee. The Court declines to engage in such speculation, especially since Ms. Sykes has given a sworn affidavit that she was not aware of that investigation.

Plaintiff's claim that she needs to depose Ms. Sykes is similarly unconvincing. *Id.* at 23. Because Plaintiff's proffered evidence casts no doubt on Ms. Sykes' credibility, Plaintiff presents no legitimate grounds to depose Ms. Sykes—she offers only her own desire to test Ms. Sykes' credibility. As with her bare desire to depose Chief Judge Smith, this desire is insufficient.

Even if Plaintiff could make a prima facie showing of retaliation, Defendant has put forth a non-retaliatory reason for its actions: Plaintiff's prior behavior at, and ban from, Defendant's Detroit office. In disputing this reason, Plaintiff presents a litany of factors which fall roughly into four categories. None of these factors carries the day for her claims.

First, Plaintiff claims that the ban was illegitimate and thus not a sufficient reason for Defendant to revoke her offer. Plaintiff claims that she did not know of the ban and that Defendant has not produced sufficient evidence of the existence of the ban. *Id.* at 26. As a direct impeachment of these allegations, the record contains the USPTO's security office's request for the ban on August 1, 2012, as well as an internal communication about the ban on September 5, 2012. FOIA Req. at 13–14. Tellingly, Plaintiff received these communications through her FOIA Request on October 2, 2012. Moreover, she received a partial video of the July 27, 2012 incident through her subsequent FOIA appeal. Plaintiff's extensive communications about the incident and her receipt of information relating to it belies her contention that she did not know of the ban.

That Plaintiff did not return to the Detroit office until July 28, 2015 also suggests that the ban existed and Plaintiff knew about it. Finally, Mr. Patten's email to Plaintiff that her access to the Detroit office had been restored indicates that her access must have previously been revoked. Pl.'s Hearing Exhibits, Ex. 5. In the face of Plaintiff's unsupported assertions, Defendant has submitted several pieces of credible documentary evidence that the ban existed and Plaintiff

knew of it.  There is also no reason for the Court to find that the ban was illegitimate—

Defendant has produced record of the threats that Plaintiff made to Ms. Anekwe.  July 27, 2012

Incident Report at 8.  Threatening behavior is certainly a legitimate reason for a ban.

Accordingly, even if Plaintiff stated a prima facie case for retaliation here, she would still fail to

create a genuine issue as to whether the ban was a legitimate and non-retaliatory reason for

rescission.

Second, Plaintiff asserts that the civil and criminal action stemming from the July 2012

incident somehow casts doubt on Defendant's non-retaliatory reason.  Pl.'s Opp'n to MSJ at 25–

26.  The mere fact that Plaintiff filed a later-dismissed action against employees of the USPTO is

not probative of any wrongdoing on their part.  The dismissal of criminal charges against

Plaintiff also does not prove that she was in the right.  If anything, the fact that criminal charges

were brought in the first place casts doubt on Plaintiff's version of events.  Whether or not events

occurred precisely as Defendant describes, there is no doubt that the July 2012 event—which

resulted in criminal charges—cannot conceivably be categorized as pretext for retaliation for

EEO activity.

Third, Plaintiff believes that the circumstances of the revocation of her offer rebut

Defendant's stated reason for rescission.  Specifically, Plaintiff contends that Defendant did not

ask her side of the story and did not initially state its reason for rescinding her offer.  *Id.* at 25.

Plaintiff also states that her revocation letter was aimless and that she had security clearance at

the time of the offer.  *Id.*  Though it is true that a security clearance was required for the position,

Plaintiff ignores the fact that the offer was also expressly subject to a "suitability determination."

June 30 Letter; July 12 Letter.  Because Defendant determined that Plaintiff was not suitable for

employment due to the July 2012 incident and the resulting ban, Plaintiff's security clearance is

not relevant. Plaintiff does not point to anything in the June 30 or the July 12 letter that requires Defendant to ask her side of the story or communicate the reasons for her termination in any specific way. These observations thus do not call into question Defendant's stated reason for rescinding Plaintiff's offer.

Finally, Plaintiff provides a number of miscellaneous observations: the "uncanny nature of these allegations," her own "elaborate decorations and associations as a 'best qualified' patent attorney," her "initial and consistent contest to the employees' allegations," and "that Defendant has fabricated yet another 'incident' which is non-descript that allegedly occurred in August 2015 after this EEO investigation was launched." Pl.'s Opp'n to MSJ at 25–26. There is no clear connection, and Plaintiff does not appear to allege any, between these observations and Defendant's determination that Plaintiff's prior behavior at and ban from its office made her unsuitable for employment. Thus, even if Plaintiff had stated a prima facie case of retaliation, none of her arguments would create a genuine issue as to Defendant's stated, non-retaliatory reason for rescission, and summary judgment would remain appropriate.

### 2.    Counts 6 and 7: CP-2016-0017 and CP-2016-0059

Because Defendant has moved to dismiss Counts 6 and 7 under Rule 12(b)(6), the Court does not move beyond the face of the Second Amended Complaint in determining that Plaintiff has not stated a claim for relief. The Court accepts all of Plaintiff's allegations as true for the purposes of these claims.

In opposition to this motion, Plaintiff alleges that the individuals hired for the positions are objectively less qualified than her. Second Am. Compl. ¶¶ 39, 43. Plaintiff also claims that the individuals in charge of hiring for CP-2015-0014 and CP-2015-0050 were in charge of hiring for these positions. *Id.*

Plaintiff fails to state a claim for retaliation because she does not plausibly allege any link between her initiation of discrimination investigations and the USPTO's decision not to interview or hire her for the two patent examiner positions. Though Plaintiff is not required to formally plead the elements of a prima facie case, she is required to state a plausible claim that her non-hire was the result of her discrimination proceedings. The Court accepts as true that the hiring individuals were the same for all four positions, but absent any allegation that the hiring officials knew of Plaintiff's EEO complaints, Plaintiff does not allege retaliation. *See Chamblee*, 2014 U.S. Dist. LEXIS at *21–22 ("Because the Complaint does not allege sufficient facts to support a reasonable inference that Ellis knew of the complaints, the Complaint fails to set forth a causal link between Chamblee's protected activity and his termination. Therefore, the Complaint fails to state a claim for retaliatory termination.").

Nonetheless, because the Fourth Circuit allows plaintiffs broad latitude to amend their complaints in the Title VII context, it is appropriate to dismiss Counts 6 and 7 without prejudice. *See, e.g., Harman v. Unisys Corp.*, 356 F. App'x 638, 641 (4th Cir. 2009) (holding that "the district court should have allowed Harman an opportunity to refine her Title VII, ADEA and § 1981 retaliation claims by amending her complaint, rather than dismiss those claims with prejudice.").

### 3.    Count 8: Denial of Access

Defendant has moved to dismiss Plaintiff's claim of retaliation stemming from Plaintiff being denied access to Defendant's Detroit office on July 28, 2015. Plaintiff alleges that a security officer's denial of her access to that office was retaliation in violation of Title VII for her decision to pursue EEO investigations.

Plaintiff cannot state a claim for retaliation because her rejection from Defendant's Detroit office on one occasion does not rise to the level of an adverse employment action under Title VII. *See Totten*, 421 F. Supp. 2d at 121 (holding that "A single incidence of non-admittance to a federal facility" does not constitute an adverse employment action under Title VII). Thus, even if the Court were to assume that the security officer knew of Plaintiff's EEO activity, Plaintiff fails to state a claim for retaliation. Since Plaintiff cannot possibly amend her Complaint to state a claim upon which relief could be granted, it is appropriate to dismiss this Count with prejudice.

## IV. PLAINTIFF'S RULE 11 AND RULE 60 MOTIONS

Having resolved the substance of Defendant's motions, the Court now turns to Plaintiff's pending motions under Rule 11 and Rule 60 of the Federal Rules of Civil Procedure. These motions are meritless. The Rule 11 motion levies unsupported allegations at opposing counsel, while the Rule 60 motion is largely moot and is further unsupported in the law. Each of these two motions will be addressed briefly below.

### A.   Motion for Rule 11 Sanctions

Plaintiff presents a number of reasons that she believes sanctions to be appropriate. The Court finds none of these arguments persuasive.

Rule 11 requires an attorney to certify that, to the best of the attorney's knowledge, "the factual contentions [in a submission] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Pursuant to Rule 11(c)(1), the Court may sanction an attorney if it determines that Rule 11(b) has been violated. *See* Fed. R. Civ. P. 11(c)(1). An attorney violates Rule 11(b)(3) "where there is *no* factual basis for a plaintiff's allegations."

*Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). On the other hand, an attorney's reliance on "ambiguous or inconsequential facts[] may merit dismissal, but not punishment." *Id.*

Plaintiff first contends that defense counsel presented two misrepresentations on which the Court relied in declining to issue a preliminary injunction. These alleged misrepresentations are that Plaintiff was banned from Defendant's Detroit office for a period of two years and that Defendant had a legitimate reason to rescind Plaintiff's job offer. Pl.'s Rule 11 Mot. at 2.

As the Court has expounded upon in detail above, these statements alleged to be misrepresentations are supported by an abundance of evidence. In fact, this Court has found defense counsel's proffered evidence as to these statements so convincing, and Plaintiff's responses so unavailing, that summary judgment is appropriate. To briefly recap, the evidence of Plaintiff's ban includes intra-office communications about the ban that Plaintiff received through a FOIA Request, Plaintiff's failure to return to the Detroit office for three years, and the fact that Defendant had to *restore* Plaintiff's access to that office. *See* FOIA Req.; Pl.'s Hearing Exhibits, Ex. 5. The evidence that Defendant legitimately rescinded Plaintiff's conditional job offer includes all of the above as well as sworn affidavits from those responsible for the rescission. *See* Sykes Aff.; Mendez Aff. Rule 11 sanctions are only appropriate when there is *no* evidence of a particular statement; here, there is enough evidence of the statements to dictate summary judgment in Defendant's favor.

Plaintiff next claims that the Majca and Leung affidavits are incredible and defense counsel's reliance on them in relation to patent examiner position CP-2015-0014 necessitates Rule 11 sanctions. Pl.'s Rule 11 Mot. at 4–5. Specifically, Plaintiff contends that her own personal experience contradicts the Majca affidavit explaining why two individuals hired from

the January certificate also appeared on the March certificate. *Id.* Plaintiff also argues that the hiring of Angeline Premraj contradicts the Leung affidavit because it proves that CP-2015-0014 remained open after Plaintiff applied. *Id.* at 5.

Both of these arguments are addressed above. Briefly, Plaintiff's personal experience does not present any reason to question the credibility of the Majca affidavit, which was made under penalty of perjury and is corroborated by documentary evidence. Majca Aff.; Jan. Certif. of Elig. List; Mar. Certif. of Elig. List. The Court has also found no reason to question Defendant's evidence that Ms. Premraj was hired for a different position, CP-2015-0073. 0073 Selec. Certif. Once again, defense counsel does not present "no evidence" of its claim—it presents enough uncontroverted evidence to conclusively establish Defendant's right to summary judgment.

Finally, Plaintiff identifies four statements of fact in Defendant's motion for partial summary judgment that are alleged to be misrepresentations. These facts are as follows: (1) Defendant selected only candidates from the January certificate of eligibles list for patent examiner position CP-2015-0014; (2) Veterans' preferences apply equally to positions at the GS-7 and GS-9 salary grade; (3) Plaintiff was not selected for patent examiner position CP-2015-0050 due to veterans' preference requirements; and (4) Ms. Sykes rescinded Plaintiff's conditional job offer due to Plaintiff's prior behavior at and ban from Defendant's Detroit office. Pl.'s Rule 11 Mot. at 6–8.

The Court has addressed all of these arguments and has found summary judgment for Defendant to be appropriate in relation to all of them. As noted above, defense counsel has provided a number of affidavits and documents proving that Defendant selected only candidates from the January certificate of eligibles list. Defense counsel has also established that veterans'

36

preferences apply to both salary grades in the relevant sense—Plaintiff's contention that it does not is based on a misreading of the policy. *See* Handbook at 43. Additionally, defense counsel has shown through extensive documentary evidence that Plaintiff was not selected for patent examiner position CP-2015-0050 because of veterans' preferences hiring requirements. Handbook at 22, 43; 0050 Selec. Certif.; 0050 Best Qualified List. Finally, defense counsel has provided affidavits and documentary evidence to prove that the rescission of Plaintiff's job offer was the result of her prior behavior at and ban from the Detroit office. That the Court finds it appropriate to grant summary judgment demonstrates that defense counsel has produced abundant evidence in support of its claims, not "no evidence" in violation of Rule 11.

 For the reasons laid out above, the Court denies Plaintiff's motion for Rule 11 sanctions.

### B.      Rule 60(b) Motion for Relief

Also pending before the Court is Plaintiff's Rule Rule 60(b) motion for relief from the Court's prior order denying her motion for a preliminary injunction. (Dkt. No. 53). Plaintiff's motion asserts errors of law, misstatements of fact, misrepresentations, misconduct, and a litany of other mistakes. In short, none of these allegations has merit.

Federal Rule of Civil Procedure 60(b) provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> . . .
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

Fed. R. Civ. P. 60(b). Rule 60(b) provides "a remedy that is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991) (internal quotations omitted); *see also Kozak v. Fedex Kinko's,*

*Inc.*, 2008 U.S. Dist. LEXIS 17823, at \*1 (E.D. Va. Mar. 7, 2008) ("A district judge has broad discretion to grant relief pursuant to Rule 60(b)."). A Rule 60(b) motion should not be granted unless (1) the motion is timely, (2) the motion is based on a meritorious defense, (3) the opposing party will not be prejudiced; and (4) exceptional circumstances are present. *Smith v. Bounds*, 813 F.2d 1299, 1303 (4th Cir. 1987), *aff'd en banc*, 841 F.2d 77 (4th Cir. 1988).

Plaintiff's Rule 60(b) Motion fails because it is not based upon any meritorious defense.[5] This motion largely rehashes Plaintiff's arguments that the Court has addressed above and has found meritless. Briefly, and at the risk of redundancy, the Court will recap the primary issue in Plaintiff's brief: whether the Court erred in concluding that the USPTO rescinded Plaintiff's job offer for CP-2016-0028 because she was banned from the USPTO's Detroit facility for a period of two years. Plaintiff asserts that she was never banned, and that her job offer was instead revoked because she had filed an EEO Complaint after her job application was denied for a previous position.

As the Court has discussed above, there is ample evidence that the ban existed: (1) the July 27, 2012 Incident Report; (2) Senior Special Agent Kevin Lewis's internal email requesting that plaintiff be "restricted from our space;" (3) security officers' internal communication about "Kristy Downing being band [sic] from PTO-Detroit;" and (4) Mr. Raymond Patten's email to Plaintiff that her "access to the Detroit office ha[d] been restored."

Plaintiff's only counterevidence is her own affidavit which states "to [her] knowledge [she] ha[s] never been formally nor legitimately banned from any USPTO facility, ever." Downing Aff. ¶ 3, Dkt. No. 47. Tellingly, however, she does not allege that she actually went to the Detroit PTO Office during that time, though she does assert that she entered the Virginia

---

[5] Relatedly, Plaintiff cannot show a likelihood of success on the merits, as is required for a preliminary injunction to issue. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the Court today rules on the merits in favor of Defendant, Plaintiff has no likelihood of success.

Office on multiple occasions in 2013–2015. *Id.* Thus, even accepting Plaintiff's affidavit as true, there is no reason to question the fact that she was not permitted to visit the Detroit campus for this time period.

Accordingly, despite Ms. Plaintiff's protestations to the contrary, the evidence in the record suggests that she was banned from the USPTO facility in Detroit. Moreover, even if she was not "formally" banned, the USPTO's documentation clearly indicates that Plaintiff had a significant security incident at the Detroit Campus on July 27, 2012. Furthermore, multiple employees from the USPTO believed that she was banned, and at least one security guard acted on this ban. This documentation reinforces the conclusion that her job offer was revoked based on this incident rather than in retaliation for her filing discrimination charges.

Plaintiff's additional arguments in support of her motion are summarily rejected. As a result, her motion for relief from the Court's preliminary injunction is denied.

### IV. CONCLUSION

For these reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment on Counts 1-5, **GRANTS** Defendant's Motion to Dismiss Counts 6 and 7 without prejudice, **GRANTS** Defendant's Motion to Dismiss Counts 8-11 with prejudice, **DENIES** Plaintiff's Motion for Summary Judgment on Count 4, **DENIES** Plaintiff's Motion for Rule 11 Sanctions and **DENIES** Plaintiff's Rule 60(b) Motion for Relief.

An appropriate order shall issue.

July 18, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge